ELLIOTT, ADMR., APPELLANT, *v.* NAGY ET AL., APPELLEES.

[Cite as Elliott *v.* Nagy (1986), 22 Ohio St. 3d 58.]

(No. 85-266—Decided February 5, 1986.)

*Scranton & Solze* and *Norman P. Solze,* for appellant.
*Meyer & Kocher* and *Douglas O. Meyer,* for appellees.

CELEBREZZE, C.J. In this appeal, appellant urges this court to reconsider its long-standing rejection of the attractive nuisance doctrine and to now adopt that doctrine in Ohio. Given the facts and circumstances of the instant case, we are not inclined to do so.

It is undisputed in the instant case that this little girl was not invited upon appellees' property and that her presence in their backyard was unknown to appellees. Ordinarily, a landowner owes no duty to undiscovered trespassers other than to refrain from injuring such trespassers by willful or wanton conduct. See Prosser & Keeton, Torts (5 Ed. 1984) 397, Section 58. However, the doctrine of attractive nuisance, set forth in the Restatement of the Law 2d, Torts (1965) 197, Section 339,[1] is an exception to this principle as it applies to children. The attractive nuisance doctrine creates a duty in a landowner (where there was none before) to use ordinary care to prevent injury to child trespassers.

Historically, this court has been steadfast in its opposition to the doctrine. In *Railroad Co.* v. *Harvey* (1907), 77 Ohio St. 235, paragraph one of the syllabus, we held that "[i]t is not the duty of an occupier of land to exercise care to make it safe for infant children who come upon it without invitation but merely by sufferance." We reaffirmed that holding in *Hannan* v. *Ehrlich* (1921), 102 Ohio St. 176; *Sharp Realty Co.* v. *Forsha* (1930), 122 Ohio St. 368; and *Signs* v. *Signs* (1954), 161 Ohio St. 241 [53 O.O. 110]. We have not favored attractive nuisance, as we noted in *Ehrlich, supra,* because this doctrine imposes a greater burden to protect children on members of the community (who are often strangers to a child and his family) than is imposed on the parents themselves.

We are now asked to reconsider these past decisions and adopt the attractive nuisance doctrine as set forth in the Restatement. This court has always been willing to re-examine its judicially created doctrines. See, *e.g., Haverlack* v. *Portage Homes, Inc.* (1982), 2 Ohio St. 3d 26 (abolition of sovereign immunity with respect to municipalities); *Kirchner* v. *Crystal* (1984), 15 Ohio St. 3d 326 (abolition of parental immunity); *Shearer* v. *Shearer* (1985), 18 Ohio St. 3d 94 (abrogation of interspousal immunity).

---

[1] The Restatement of the Law 2d, Torts (1965) 197, Section 339, reads as follows:

"A possessor of land is subject to liability for physical harm to children trespassing thereon caused by an artificial condition upon the land if

"(a) the place where the condition exists is one upon which the possessor knows or has reason to know that children are likely to trespass, and

"(b) the condition is one of which the possessor knows or has reason to know and which he realizes or should realize will involve an unreasonable risk of death or serious bodily harm to such children, and

"(c) the children because of their youth do not discover the condition or realize the risk involved in intermeddling with it or in coming within the area made dangerous by it, and

"(d) the utility to the possessor of maintaining the condition and the burden of eliminating the danger are slight as compared with the risk to children involved, and

"(e) the possessor fails to exercise reasonable care to eliminate the danger or otherwise to protect the children."

The instant case, however, presents no compelling reasons meriting the adoption of the attractive nuisance doctrine.

The death of this child was a tragedy. When such a tragedy happens, the first reaction, quite naturally, may be to cast about for fault or some explanation of why the tragedy occurred. In some situations, however, no one is at fault. There is, in these instances, no explanation other than the ability, well known to every parent, of an active and inquisitive child to wander in search of adventure and the random cruelty of fate which sometimes turns adventure into catastrophe.

In the instant case, a child under the watchful eyes of the grandparents whom she was visiting vanished in a few moments and wandered a considerable distance to the backyard pool of totally unsuspecting neighbors, where she somehow climbed the pool's access ladder and got into the water. Appellant contends that if the attractive nuisance doctrine is adopted there will be questions of fact as to whether appellees exercised reasonable care in guarding their backyard and pool against just such instances as this. We believe, however, that it is not realistic to charge appellees with the duty of protecting uninvited visitors at all times. It would be unfair to subject these parties to the lengthy, costly and uncertain process of determining liability based on the attractive nuisance doctrine when the facts and circumstances of the instant case show that this tragedy was apparently the result of circumstances for which no one in good conscience can be blamed.

It was exactly this type of unavoidable accident recognized by Justice Oliver Wendell Holmes in his classic book, The Common Law (1881):

"Why is a man not responsible for the consequences of an act innocent in its direct and obvious effects, when those consequences would not have followed but for the intervention of a series of extraordinary, although natural, events? The reason is, that, if the intervening events are of such a kind that no foresight could have been expected to look out for them, the defendant is not to blame for having failed to do so. * * *" Id. at 92.

"The general principle of our law is that loss from accident must lie where it falls, and this principle is not affected by the fact that a human being is the instrument of misfortune. But relatively to a given human being anything is accident which he could not fairly have been expected to contemplate as possible, and therefore to avoid. * * *" Id. at 94. See, also, Prosser & Keeton, Torts, supra, at 162, Section 29.

We thus decline appellant's invitation to adopt the attractive nuisance doctrine and conclude that summary judgment was proper. We hold that the attractive nuisance doctrine will not extend tort liability to the owner of a home swimming pool where the presence of a child who was injured or drowned therein was not foreseeable by the property owner.

Accordingly, the judgment of the court of appeals is affirmed.

*Judgment affirmed.*

LOCHER, HOLMES, C. BROWN, DAHLING and WRIGHT, JJ., concur.

SWEENEY, J., dissents.

DAHLING, J., of the Eleventh Appellate District, sitting for DOUGLAS, J.

SWEENEY, J., dissenting. In finding no cause of action based upon the facts alleged herein, the majority has reaffirmed *Railroad Co.* v. *Harvey* (1907), 77 Ohio St. 235, a case which can best be described as an ancient vestige of a bygone era. The rule of law enunciated in *Harvey* and upheld by the majority is devoid of any practical application in light of the evolution of modern society since the time this rule was first exalted in this state nearly eighty years ago.

I find the *Harvey* doctrine to be akin to the judicially created sovereign immunity doctrine which was promoted under the false assumption that "the king can do no wrong." I view the *Harvey* doctrine as a perpetration of the fallacious notion that "the landowner can do no wrong" under any facts or circumstances. The inherent folly of such an erroneous supposition is, in my mind, beyond debate given the overwhelming proliferation of residential swimming pools in modern society.

The better standard, in my opinion, is that which has been adopted by the vast majority of jurisdictions around the country, and is set forth in Section 339 of the Restatement of the Law 2d, Torts (1965) 197, entitled "Artificial Conditions Highly Dangerous to Trespassing Children," as follows:

"A possessor of land is subject to liability for physical harm to children trespassing thereon caused by an artificial condition upon the land if

"(a) the place where the condition exists is one upon which the possessor knows or has reason to know that children are likely to trespass, and

"(b) the condition is one of which the possessor knows or has reason to know and which he realizes or should realize will involve an unreasonable risk of death or serious bodily harm to such children, and

"(c) the children because of their youth do not discover the condition or realize the risk involved in intermeddling with it or in coming within the area made dangerous by it, and

"(d) the utility to the possessor of maintaining the condition and the burden of eliminating the danger are slight as compared with the risk to children involved, and

"(e) the possessor fails to exercise reasonable care to eliminate the danger or otherwise to protect the children."

This standard, unlike the *Harvey* doctrine, presents a fair and workable scheme to assist courts in determining whether liability under the circumstances of a particular cause is warranted.

One commentator has noted that "[t]he increase in the number of swimming pools in the last few years has been one of truly staggering proportion." Annotation (1968), 20 A.L.R. 3d 1395, 1398. It seems, however, that nearly eighteen years after this accurate observation this court is content to stubbornly resist acknowledgment of this aspect of modern society by blindly adhering to the *Harvey* doctrine.

Adoption of the aforementioned Restatement standard will not, as the majority seems to intimate, automatically impose liability on defendants. What is at stake, however, is whether the plaintiff has stated a cause of action and deserves his day in court. Notions of fairness and justice dictate that both of these considerations be answered in the affirmative. In addition, questions of duty and foreseeability are better left to the trier-of-fact, as is the case in most actions sounding in negligence, instead of the summary finding of no liability as was rendered below.

Therefore, I would overrule *Harvey* in light of its obsolescence in modern society and adopt the Restatement standard, thereby reversing the decision of the court of appeals and remanding the cause to the trial court for a fair and reasonable disposition of this tragic set of circumstances.