MIMA ET AL., APPELLANTS AND CROSS-APPELLEES, *v.* CITY OF AKRON, APPELLEE AND CROSS-APPELLANT.

(No. 12139—Decided April 9, 1986.)

*Hugh J. Bode,* for appellants and cross-appellees.

*Cheri B. Cunningham,* assistant director of law, for appellee and cross-appellant.

GEORGE, J. On November 10, 1979, Shaun Mima, then fourteen years old, was injured when an above-ground manhole, part of Akron's sewer system, collapsed and fell on him. The manhole was located in a wooded ravine adjacent to a residential area. Shaun and a friend had been hitting the structure with hammers, intent on making it fall. As a result of the accident, Shaun is paralyzed from the waist down.

Shaun's father, as guardian, filed suit against the city, alleging negligence and wanton misconduct in failing to maintain the sewer system. A jury returned a general verdict of $265,000 in Shaun's favor. The trial court, however, entered judgment in favor of the city on the basis of the jury's response to interrogatories, indicating it had found Shaun assumed the risk.

Shaun has appealed, raising four assignments of error. (For purposes of convenience, this court will refer to plaintiff-appellant as Shaun, although it

was his father who filed suit as his guardian.) The city has responded with seven cross-assignments of error. This court affirms the trial court judgment.

## Assignment of Error I

"The trial court erred by entering judgment for the City of Akron on the basis that the plaintiff had assumed the risk of his injury when the jury had found the City of Akron guilty of wanton misconduct that was a proximate cause of plaintiff's injuries."

The trial court vacated the jury's award on the ground that assumption of risk is a complete bar to recovery. Indeed, this was the law of Ohio prior to the enactment of R.C. 2315.19, the comparative negligence statute. Additionally, the defense of implied assumption of risk has been merged with the defense of contributory negligence. *Anderson* v. *Ceccardi* (1983), 6 Ohio St. 3d 110, 6 OBR 170, 451 N.E. 2d 780; and *Hirschbach* v. *Cincinnati Gas & Elec. Co.* (1983), 6 Ohio St. 3d 206, 209, 6 OBR 259, 262, 452 N.E. 2d 326, 330. It thus follows that implied assumption of risk is now subject to the same comparison as contributory negligence.

In making this pronouncement, however, the Supreme Court expressly excepted from this merger a specific category of assumption of risk known as primary assumption of risk which involves "a lack of duty owed by the defendant to the plaintiff." *Anderson, supra,* at 114, 6 OBR at 174, 451 N.E. 2d at 783. As an example, the court mentioned the baseball cases where a plaintiff is injured by a baseball being hit into the stands. It was this type of assumption of risk which was found in *Porter* v. *Miller* (1983), 13 Ohio App. 3d 93, 96, 13 OBR 110, 112, 468 N.E. 2d 134, 137, fn. 2:

"The instant case typifies the 'primary assumption of risk' category of cases. Here, appellee [landlord] had no duty to remove from a noncommon walkway accumulated ice and snow. Thus, appellee cannot be said to have *breached* any duty owed to appellant [tenant]. * * *" (Emphasis *sic*.)

Obviously, this type of assumption of risk differs drastically from the type merged with contributory negligence under the statute. The elements of the traditional assumption of risk were outlined by the Supreme Court in *Benjamin* v. *Deffet Rentals, Inc.* (1981), 66 Ohio St. 2d 86, 89, 20 O.O. 3d 71, 73, 419 N.E. 2d 883, 886:

" 'The gist of the defense of assumption of the risk is (1) consent or acquiescence in (2) an appreciated or known (3) risk * * *.' " Quoting *Wever* v. *Hicks* (1967), 11 Ohio St. 2d 230, 234, 40 O.O. 2d 203, 206, 228 N.E. 2d 315, 318.

Primary assumption of risk is really an alternative expression for the concept that a defendant either owed no duty of care to the plaintiff or did not breach any duty owed. See, *e.g., Blackburn* v. *Dorta* (Fla. 1977), 348 So. 2d 287; *Armstrong* v. *Mailand* (Minn. 1979), 284 N.W. 2d 343. Primary assumption of risk has nothing to do with plaintiff's conduct. 1 Budman, Comparative Negligence (1986) 4-36, Section 4.20[2][b][i].

In the case at bar, the trial court gave the following charge to the jury with reference to assumption of the risk:

"If the plaintiff voluntarily assumes a known risk, and there is a lack of duty owed by the city, the Defendant, to the Plaintiff, he cannot recover.

"In this case, the City does not owe a duty of care to a trespasser except not to willfully, wantonly or recklessly injure him.

"To assume a risk, a person must actually know of the danger, or the danger must be sufficiently obvious to permit you to infer that he knew of and realized the danger. In addition, he must have had a conscious opportunity to avoid such danger by the use of ordinary care.

"Assumption of risk is an affirmative defense. The burden of proof on this issue is on the Defendant. If you find that the Defendant has established by the greater weight of the evidence that the Plaintiff actually knew of the danger, or that the danger was sufficiently obvious to permit you to infer that he knew of and realized the danger, and that the Plaintiff had a conscious opportunity to avoid such danger by the use of ordinary care, then the Plaintiff cannot recover. However, if the Defendant fails to prove any one of the foregoing elements, then the Plaintiff did not assume the risk, and you will dismiss this issue from further consideration.

"* * *"

The charge mentions the fact that if there is a lack of duty owed by the city, the plaintiff cannot recover. But it goes on to focus on the plaintiff's acts in recognizing the danger and voluntarily encountering it. Such a charge is misleading where the defense raised is primary assumption of risk and the focus must be on the lack of duty owed. The jury here clearly was misled by the charge. It found Shaun assumed the risk, but it also found the city guilty of wanton misconduct for failure to inspect and maintain the manhole.

Although the jury was misled by the instruction, the trial court's judgment was correct because, as a matter of law, the city did not breach a duty owed to Shaun.

Shaun was a trespasser. A trespasser is a person who enters the premises of another without license, invitation or other right, and intrudes for some definite purpose of his own, or at his convenience, or merely as an idler with no apparent purpose, other than, perhaps, to satisfy his curiosity. See 39 Ohio Jurisprudence 2d (1959) 575, Negligence, Section 57. The rule of law in Ohio is that a person owes a trespasser no duty except to refrain from willful or wanton misconduct which is likely to injure him. *Id.* at 576, Section 58. There is no affirmative duty to anticipate the presence of a trespasser and to maintain the land for the protection of an unknown trespasser. *Id.* at 577.

Wanton misconduct is a failure to exercise any care whatsoever toward those to whom a duty is owed, under circumstances in which there is great probability that harm will result. *Hawkins* v. *Ivy* (1977), 50 Ohio St. 2d 114, 4 O.O. 3d 243, 363 N.E. 2d 367. Shaun asserts that the city was wanton in its failure to inspect and maintain the manholes, thereby allowing them to deteriorate to a point where there was great probability that he would be injured by them.

The evidence showed that the manholes in that area had been constructed sometime around 1925. While there was no program of regular inspections of all manholes, the city did have ways of determining when serious problems were developing in its sewer system. Sewer grates, called racks, were inspected almost daily. If an unusual accumulation of debris appeared on any of them, the fact was reported to a supervisor. Furthermore, there was testimony that the city had experienced a "blockage" in this very area in 1974 — five years prior to the incident here. At that time, workers checked the manholes and found nothing to indicate that they needed major repair work. Since the manholes had successfully withstood the ravages of time for fifty years, there was no reason for the city to suspect they might have deteriorated to a point where they could collapse in five years.

The facts of this case then do not support the jury's finding that the city was guilty of wanton misconduct. The trial court should have granted the city's motion for a directed verdict since the city's conduct, as a matter of law, did not rise to the level of wanton misconduct. Absent wanton misconduct, the

city did not breach its duty to Shaun, a trespasser.

Where no duty is breached, there is no liability. Whether the trial court characterized this as primary assumption of risk or as a necessary element to establish negligence is unimportant to this analysis. The result is the same. Thus, the first assignment of error is overruled.

### Assignment of Error II

"The trial court erred by failing to instruct the jury that the City of Akron had a duty to use ordinary care to protect Shaun Mima notwithstanding his technical legal status as a licensee or trespasser. This error is demonstrated by the trial court's failure to give appellant's jury instructions 1 and 4."

In this assignment of error, Shaun asks this court first to adopt the attractive nuisance doctrine and second to abandon the status classification (invitee, licensee, trespasser) as determinative of the duty owed by a landowner or occupant to an entrant on the premises. This court declines to do so.

The Supreme Court, in an opinion released February 5, 1986, refused to reconsider its long-standing rejection of the attractive nuisance doctrine as set forth in the Restatement of the Law 2d, Torts (1965) 197, Section 339. *Elliott* v. *Nagy* (1986), 22 Ohio St. 3d 58, 61, 22 OBR 77, 79, 488 N.E. 2d 853, 855-856. The proposed jury instruction here was taken verbatim from this section. Similarly, the Supreme Court has refused to impose a standard of ordinary care upon an owner or occupier of land, regardless of the entrant's status classification. *Moore* v. *Denune & Pipic, Inc.* (1971), 26 Ohio St. 2d 125, 55 O.O. 2d 237, 269 N.E. 2d 599. The trial court did not err in refusing to give these jury instructions. The second assignment of error then is overruled.

### Assignment of Error III

"Where inconsistencies between a jury's answers to interrogatories on damages and fault and the general verdict form signed by the jury exist and where the trial court has failed to exercise its options under Rule 49 to correct those inconsistencies, a new trial on the issue of damages must be granted."

Civ. R. 49(B) provides in pertinent part:

"* * * When one or more of the answers is inconsistent with the general verdict, judgment may be entered pursuant to Rule 58 in accordance with the answers, notwithstanding the general verdict, or the court may return the jury for further consideration of its answers and verdict or may order a new trial."

The trial court here found inconsistency in the jury's determination. The jury found that Shaun had assumed the risk and at the same time granted a $265,000 verdict for Shaun.

As noted in the discussion of Assignment of Error I, the charge to the jury on assumption of risk was misleading because it focused on the plaintiff's acts, rather than on the defendant's lack of duty. Despite the fact that the jury may have been misled, however, the court was correct in concluding that there was primary assumption of risk here in that the city owed no duty to Shaun, a trespasser. The question was one of law and the trial court reached the right destination, although by a circuitous route. *Savin* v. *Butler* (1924), 111 Ohio St. 695, 146 N.E. 673; *Boston* v. *Daugherty* (1983), 12 Ohio App. 3d 4, 6, 12 OBR 88, 91, 465 N.E. 2d 1317, 1320. The third assignment of error is overruled.

### Assignment of Error IV

"A jury determination of $265,000 as compensation for life threatening internal injuries, a comminuted fracture of the right leg, and paraplegia at 14, are [*sic*] inadequate where testimony is unrefuted that medical bills are in excess of $150,000, that future medical expense

will be incurred, that plaintiff has suffered permanent, disabling, and life threatening injuries which have inflicted pain, suffering and emotional distress now and into the future are [*sic*] grossly inadequate, are [*sic*] against the manifest weight of the evidence and shock the conscious [*sic*]."

While this court has determined that the trial court was correct in vacating the jury's award of $265,000 to Shaun, this court will now address Shaun's contention that the verdict was inadequate, against the manifest weight of the evidence and shocking to the conscience. App. R. 12(A). A review of the record shows Shaun had incurred medical expenses slightly in excess of $158,000. There was testimony that future medical expenses could be expected to be incurred, but no evidence upon which a jury could base a projection of such future amounts. Nor is there anything here to indicate the jury was swayed by passion or prejudice in establishing the amount. In view of all this, this court cannot find that the judgment was unreasonable. Where the judgment is supported by some competent, credible evidence, it shall not be reversed by a reviewing court as being against the manifest weight of the evidence. *C. E. Morris Co.* v. *Foley Constr. Co.* (1978), 54 Ohio St. 2d 279, 8 O.O. 3d 261, 376 N.E. 2d 578. The fourth assignment of error is thus overruled.

Since this court affirms the trial court's judgment, it is unnecessary to address the city's cross-assignments of error. R.C. 2505.22; *Parton* v. *Weilnau* (1959), 169 Ohio St. 145, 170-171, 8 O.O. 2d 134, 148, 158 N.E. 2d 719, 736.

*Judgment affirmed.*

Baird and Lynch, JJ., concur.

Lynch, J., retired, of the Seventh Appellate District, was assigned to active duty pursuant to Section 6(C), Article IV, Constitution.