PHILLIPS, etc., Appellant,

v.

**DAYTON POWER AND LIGHT COMPANY, Appellee, et al.**

[Cite as *Phillips v. Dayton Power & Light Co.* (1994), 93 Ohio App.3d 111.]

Court of Appeals of Ohio,
Miami County.

No. 93–CA–23.

Decided Feb. 9, 1994.

*Michael Garth Moore,* for appellant.

*David C. Greer,* for appellee.

FAIN, Judge.

Plaintiff-appellant John Phillips appeals from a summary judgment rendered in favor of defendant-appellee Dayton Power and Light Company ("DP&L"). Phillips contends that the trial court erred when it granted summary judgment for DP&L. We agree. Accordingly, the judgment of the trial court is reversed, and this cause is remanded for further proceedings.

## I

Roger Phillips was sixteen years old when he climbed an electrical utility tower located in the back yard of a friend's home in a residential section of West Milton, Ohio. While Roger was climbing on the tower, he suffered severe burns as a result of electrical arcing. Roger's parents filed suit against DP&L and several individual defendants. All defendants except DP&L either settled or were dismissed.

Roger had been drinking beer and playing cards and drinking games in Jerry Kinnison's garage with Kinnison's son, Craig, and several other young people

from around 7:00 p.m. until 11:00 p.m. Around 11:00 p.m., Roger and a friend, Randy Ray, climbed the DP&L 69KV transmission tower in Kinnison's back yard.

Roger had climbed the tower approximately four or five times before, and at least once during the daytime. He recognized that the tower was approximately seventy-five feet high and knew that wires were located overhead in the area of the tower. A large shed was located next to the tower on the south side, and a large brick grill was located on the west side. Roger considered the feat to be risky.

The transmission tower in Kinnison's back yard was built by DP&L in 1928. It is a four-legged steel structure latticed with cross braces. The legs are anchored in a cement base. A hand-hold/step is located on the southwest leg approximately six feet above the top surface of the cement base. The structure was in compliance with the 1928 National Electrical Safety Code ("NESC").

Signs warning of a high voltage hazard above were affixed to four sides of the tower. However, in November 1987, the signs were allegedly removed by Manganas Painting Company employees when they painted the tower. Deposition testimony of Kenneth Mitchell revealed that it was brought to the attention of at least two DP&L employees that the signs had been removed during a tree program survey. DP&L knew the signs had been removed, but failed to replace the signs.

Roger Bybee, an electrical engineer, investigated the tower and opined that although the tower complied with the NESC in 1928, the tower was not in compliance with the standards set forth in the code presently. Bybee noted that steps were required to be no closer than eight feet from an accessible surface rather than six and one-half feet. Guards were not attached to the tower to prevent an individual from climbing the tower. Conductors were not provided with guards so as to isolate them from accidental contact.

The tower and lines were in place prior to the housing development's being constructed. According to Bybee, the housing development constituted a changed condition and, as such, DP&L was subject to more stringent standards for that particular tower.

From the summary judgment rendered in favor of DP&L, Phillips appeals.

## II

Phillips's first assignment of error is as follows:

"The trial court erred in failing to state with particularity the basis for its grant of summary judgment."

■ The trial court sustained DP&L's motion for summary judgment, finding that there was no genuine issue as to any material fact. This is a sufficient basis upon which to grant summary judgment. Therefore, the trial court did not commit reversible error as Phillips asserts.

■ Furthermore, although a reasoned analysis by the trial court in rendering summary judgment would be helpful, the lack of any analysis is necessarily harmless since an appellate court's review of a summary judgment is *de novo*. Since the reviewing court must independently determine, as a matter of law, whether summary judgment was properly rendered based upon the record made up in the trial court, it is legally immaterial whether the trial court has provided a sound analysis, or any analysis. A summary judgment based on a legally erroneous analysis of the issues must be affirmed if the appellate court independently determines that upon the record summary judgment should have been rendered as a matter of law, albeit for different reasons.

Phillips's first assignment of error is overruled.

### III

■ Phillips's second assignment of error is as follows:

"Roger Phillips's status with regard to appellee Dayton Power & Light Company was not that of a trespasser. Hence, summary judgment as to appellee's negligence was improperly granted."

To render summary judgment, a trial court must determine that there is no genuine issue as to any material fact, that the moving party is entitled to judgment as a matter of law, and that, when the evidence is construed most strongly in the opposing party's favor, reasonable minds can come to but one conclusion, that conclusion being adverse to the party against whom the motion for summary judgment is made. *Harless v. Willis Day Warehousing Co.* (1978), 54 Ohio St.2d 64, 66, 8 O.O.3d 73, 74, 375 N.E.2d 46, 47.

Phillips's complaint alleged that DP&L owed the public, including the plaintiff, the highest duty of care in the construction, maintenance and inspection of its electric transmission lines and facilities. Phillips further alleged that DP&L failed to exercise this degree of care by (1) failing to locate the transmission lines and towers away from the residential areas of West Milton; (2) failing to guard the towers to prevent access to them; (3) failing to design the tower so that contact with the conductor was impossible; and (4) failing to supply complete and adequate warnings of the extreme hazard of electric shock.

In his amended complaint, Phillips alleged that DP&L had knowledge of the propensity of children to climb its towers located in residential parts of communities and that its towers had been climbed by minors; that DP&L knew that the

warning signs on this tower were missing; and that DP&L failed to replace the signs or put barrier guards on the tower to prevent unauthorized persons from climbing. Phillips alleged that this conduct constituted wilful and wanton misconduct and conscious indifference to the safety of children who were climbing the tower.

Liability for negligence is predicated upon injury caused by the failure to discharge a duty owed to the injured party. *Moncol v. N. Royalton School Dist. Bd. of Edn.* (1978), 55 Ohio St.2d 72, 75, 9 O.O.3d 75, 77, 378 N.E.2d 155, 157–158. To sustain an action in negligence, a plaintiff must demonstrate that the defendant had a duty, recognized by law, requiring him to conform his conduct to a certain standard for the protection of the plaintiff, that the defendant failed to conform his conduct to that standard, and that the defendant's conduct proximately caused the plaintiff to sustain actual loss or damage. *Id.*

The general rule regarding the duty of care of an electrical utility company is as follows:

"A power company erecting and maintaining equipment, including poles and wires, upon or along a public road, for the purpose of transmitting and distributing electrical current, is bound to exercise the highest degree of care consistent with the practical operation of such business in the construction, maintenance and inspection of such equipment, and is responsible for any conduct falling short of that standard." *Hetrick v. Marion–Reserve Power Co.* (1943), 141 Ohio St. 347, 25 O.O. 467, 48 N.E.2d 103; *Otte v. Dayton Power & Light Co.* (1988), 37 Ohio St.3d 33, 523 N.E.2d 835.

Despite a power company's compliance with the National Electrical Safety Code, a power company may be held liable in negligence for an injury that might have been anticipated with a reasonable degree of probability. Proof of a utility company's compliance with the NESC in the erection and maintenance of power lines, although probative of the utility's conformity with the requisite standard of care, is not dispositive of that issue. *Brauning v. Cincinnati Gas & Elec. Co.* (1989), 54 Ohio App.3d 38, 560 N.E.2d 811, syllabus.

DP&L argues that Phillips was an undiscovered trespasser.

" 'A trespasser is one who, without express or implied authorization, invitation or inducement, enters private premises purely for his own purposes or convenience. * * * ' " *Carswell v. Toledo Edison Co.* (1988), 53 Ohio App.3d 82, 85, 557 N.E.2d 1241, 1244, quoting *McKinney v. Hartz & Restle Realtors, Inc.* (1987), 31 Ohio St.3d 244, 31 OBR 449, 510 N.E.2d 386.

The standard of care owed by the property owners or occupiers to undiscovered trespassers is to do nothing "other than to refrain from injuring such

trespassers by wilful or wanton conduct." *Id.* An exception to this rule exists where a landowner maintains a dangerous instrumentality on or immediately adjacent to a public place where the instrument of harm's dangerousness is not readily apparent to children and where it is within easy reach or is susceptible to contact by inadvertent conduct. *Id.*

The Ohio Supreme Court has held that a four-year-old boy who ventured onto a railroad's right-of-way, which abutted the apartment complex where the child resided, without invitation or permission, was a trespasser on the railroad's property, and that the railroad owed only that duty of care owed to trespassers. *McKinney v. Hartz & Restle Realtors, Inc., supra,* 31 Ohio St.3d at 246, 31 OBR at 450–451, 510 N.E.2d at 388–389.

DP&L relies upon the Cuyahoga County Court of Appeals' opinion that determined that a fifteen-year-old boy is presumed to know that an electrical tower carries high tension wires and that the boy was a trespasser when he climbed the tower. *Lambert v. Cleveland Elec. Illum. Co.* (1930), 8 Ohio Law Abs. 704. The appellate court held that erecting a tower sixty-five feet high, out of all possible hazardous contact with anyone having a right to be on the ground, did not require any warning to persons who might climb the tower. The fifteen-year-old boy in *Lambert* had climbed an electrical utility tower located along railroad tracks.

DP&L asserts that the reasoning in *Lambert* is "particularly appropriate for this case." We disagree. *Lambert* is an appellate court case decided prior to the 1943 Ohio Supreme Court case, *Hetrick v. Marion–Reserve Power Co., supra,* which set forth the standard of care for an electrical utility company.

In the case before us, evidence was submitted that DP&L had a right-of-way upon the Kinnison property for the utility tower. Although Phillips maintains that he was an invited guest on the Kinnison property, Phillips was a trespasser onto DP&L's right-of-way and tower.

If Roger Phillips were an undiscovered trespasser, then DP&L would owe him no more than a duty to refrain from wanton and wilful misconduct. However, if DP&L knew or should have known that teenagers climbed its utility tower on occasion, then Roger Phillips would be considered a discovered trespasser, since DP&L would be aware of the hazard represented by persons like Roger. If Roger were a discovered trespasser, then DP&L owed him a higher duty, one of ordinary care, to barricade the property and/or warn of danger.

The tower in the case before us was in the middle of a residential neighborhood. A brick grill and shed were located next to the tower. The record reveals that DP&L was aware of incidents in which children had climbed its electrical

utility towers in other locations. Testimony revealed that on more than one occasion, Kinnison's friends had climbed the tower in his fenced back yard.

Furthermore, there was testimony that the signs warning of danger and high voltage had been removed from the tower approximately four years before Phillips was injured. Allegedly, DP&L was aware that these signs were removed but took no action to replace the signs. Several NESC violations occurred with regard to the tower in Kinnison's back yard.

Although Roger Phillips was a trespasser, DP&L was on notice that the warning signs had been removed from the tower and that children had a tendency to climb such towers. Whether the tendency of a sixteen year old to climb an electrical utility tower in a friend's back yard was sufficiently foreseeable to render Roger Phillips a discovered trespasser and to require DP&L at least to replace the danger signs and install a guard is a question of fact for a jury to decide; it cannot be determined as a matter of law.

Roger Phillips testified that he was not aware that he could be injured by electrical arcing even though not coming in contact with a high voltage line (he was about two and one-half inches away). He also testified that had he seen a "DANGER—HIGH VOLTAGE" sign, he would likely have been deterred from climbing the tower.

We conclude that there is a genuine issue of material fact as to whether it was sufficiently foreseeable that a teenager would climb the tower so as to render DP&L negligent in not replacing the signs or placing guards on the tower. Therefore, the trial court erred when it found that there was no genuine issue of material fact.

Phillips's second assignment of error is sustained.

## IV

Phillips's third assignment of error is as follows:

"The trial court erred in granting summary judgment as to appellant's wanton misconduct claim."

Ordinarily, a landowner owes no duty to undiscovered trespassers other than to refrain from injuring them by wilful or wanton misconduct. *Elliott v. Nagy* (1986), 22 Ohio St.3d 58, 22 OBR 77, 488 N.E.2d 853; *Bell v. Dayton* (Dec. 28, 1989), Montgomery App. No. 11049, unreported, 1989 WL 159182. "Wanton misconduct" constitutes "an entire absence of all care for the safety of others and an indifference to consequences. * * * It implies a failure to exercise any care toward those to whom a duty of care is owing when the probability that harm will

result from such failure is great, and such probability is known to the actor. It is not necessary that an injury be intended or that there be any ill will on the part of the actor toward the person injured as a result of such conduct. * * * Wanton misconduct is positive in nature while mere negligence is naturally negative in character.

" "* * * "Wilful misconduct" is something more than negligence. "Wilful misconduct" imports a more positive mental condition prompting an act than does the term "wanton misconduct." * * * [It] implies an intentional deviation from a clear duty or from a definite rule of conduct, a deliberate purpose not to discharge some duty necessary to safety, or purposely doing wrongful acts with knowledge or appreciation of the likelihood of resulting injury. * * * ' " *Peoples v. Willoughby* (1990), 70 Ohio App.3d 848, 851, 592 N.E.2d 901, 903, quoting *Tighe v. Diamond* (1948), 149 Ohio St. 520, 526–527, 37 O.O. 243, 246, 80 N.E.2d 122, 126–127.

■ Wanton misconduct is a jury question. The test for determining wanton misconduct is a two-part test. First, there is a failure to exercise any care whatsoever by those who owe a duty of care to the plaintiff. Second, the failure occurs under circumstances in which there is great probability that harm will result from the lack of care. *Matkovich v. Penn Cent. Transp. Co.* (1982), 69 Ohio St.2d 210, 212, 23 O.O.3d 224, 225, 431 N.E.2d 652, 654. In *Matkovich,* the Ohio Supreme Court held that the lack of precautions of any kind at a railroad crossing can constitute wanton misconduct by the railroad because of the serious nature of the hazard created.

■ In the case before us, even if a jury should determine that it was not foreseeable that a teenager would climb the utility tower, thereby rendering Roger Phillips an undiscovered trespasser, the jury would still have to determine whether the failure to place warning signs and guards on the electrical tower amounted to wilful and wanton misconduct.

There is evidence that the tower was placed in a residential neighborhood, that DP&L was aware that the warning signs had been removed from the tower, and that DP&L was remiss in maintaining and inspecting the tower. Allegedly, several NESC violations took place. Therefore, reasonable minds could find evidence of wanton misconduct on the part of DP&L.

A jury question exists as to whether the absence of any remedial measures by DP&L to correct NESC violations constituted a failure to exercise any care whatsoever toward those to whom DP&L owed a duty of care, under extra-

hazardous circumstances. Because reasonable minds could come to more than one conclusion on the issues presented, we conclude that the trial court improvidently granted summary judgment for DP&L.

Phillips's third assignment of error is sustained.

## V

Phillips's second and third assignments of error having been sustained, the judgment of the trial court is reversed, and this cause is remanded to the trial court for further proceedings consistent with this opinion.

*Judgment reversed*
*and cause remanded.*

GRADY, P.J., concurs.

BROGAN, J., dissents.

BROGAN, Judge, dissenting.

I must respectfully dissent from the opinion of my colleagues in this matter. I believe no reasonable juror could conclude from the evidence submitted in this summary proceeding that the Dayton Power and Light Company had acted "wilfully and wantonly" in failing to prevent a sixteen-and-one-half-year-old boy from climbing a seventy-five foot electric utility tower and being severely injured. *Carswell v. Toledo Edison Co.* (1988), 53 Ohio App.3d 82, 557 N.E.2d 1241.

Even if we were to assume the existence of facts that the appellant was a discovered trespasser, no reasonable juror could conclude that DP&L's negligence in this matter exceeded that of the intoxicated teenager.