GARCIA, Appellant,

v.

PUSKAS FAMILY FLOWERS, INC. et al., Appellees.

[Cite as *Garcia v. Puskas Family Flowers, Inc.* (1996), 108 Ohio App.3d 683.]

Court of Appeals of Ohio,
Ninth District, Lorain County.

No. 95CA006104.

Decided Jan. 24, 1996.

*Robert Gary,* for appellant.

*Thomas Kaiser,* for appellee.

DICKINSON, Judge.

Plaintiff Ivadene Garcia, the administrator of the estate of Derek Garcia, has appealed from an order of the Lorain County Court of Common Pleas that granted defendants Gregory Puskas and Puskas Family Flowers, Inc. summary judgment. She has argued that the trial court incorrectly granted defendants summary judgment because they had failed to demonstrate that there were no genuine issues of material fact and that they were entitled to judgment as a matter of law. This court affirms the judgment of the trial court because

defendants did establish that there were no genuine issues of material fact and that they were entitled to judgment as a matter of law.

## I

Plaintiff Ivadene Garcia is the administrator of the estate of Derek Garcia, her deceased son. On the afternoon of April 4, 1993, Derek Garcia, who was ten years old, along with several other children, entered property owned by defendant Puskas Family Flowers, Inc. ("Family"). Although there was evidence that defendants knew that children often trespassed on Family's property and played in and around a pond located on it, there was no evidence that defendants knew of the presence of Derek and the other children that afternoon. The children dragged a double-hulled boat, which had been leaning against a stone wall, to the pond, and Derek and two others climbed into the boat and paddled it to the center of the pond. The boat began to fill with water through two holes in its bottom hull. Derek fell out of the boat and drowned.

On July 27, 1993, plaintiff filed suit against Family and its vice president, Gregory Puskas. Plaintiff sought damages for the wrongful death of Derek Garcia and for the injuries, mental anguish, and pain and suffering Derek experienced prior to his death. She alleged that defendants had been negligent in failing to secure the boat because they knew, or should have known, that it had two holes in its bottom hull and would, therefore, fill with water if used on the pond. She further alleged that defendants had known, or should have known, that children played in and around the pond and, therefore, should have warned them of the boat's dangerousness.

On September 13, 1994, defendants moved the trial court for summary judgment on the ground that they had not breached a duty owed to Derek Garcia. Plaintiff responded to defendants' motion on October 19, 1994. The trial court granted defendants' motion on March 14, 1995, and plaintiff timely appealed to this court.

## II

Plaintiff's sole assignment of error is that the trial court incorrectly granted defendants summary judgment. In reviewing a trial court's ruling on a motion for summary judgment, this court applies the same standard a trial court is required to apply in the first instance: whether there were any genuine issues of material fact and whether the moving party was entitled to judgment as a matter of law. *Parenti v. Goodyear Tire & Rubber Co.* (1990), 66 Ohio App.3d 826, 829, 586 N.E.2d 1121, 1122–1123. The first step in determining whether there were any genuine issues of material fact is an examination of applicable substantive law:

"As to materiality, the substantive law will identify which facts are material. Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson v. Liberty Lobby, Inc.* (1986), 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202, 211.

As the moving party on their motion for summary judgment, defendants had the initial burden of informing the trial court of the basis upon which they claimed to be entitled to summary judgment. *Celotex Corp. v. Catrett* (1986), 477 U.S. 317, 323, 106 S.Ct. 2548, 2552–2553, 91 L.Ed.2d 265, 274. Plaintiff, however, would have had the burden of proof at trial. Accordingly, to avoid having summary judgment properly entered against her, plaintiff was required to introduce evidence, or point to evidence already in the record, that, if believed, would have been sufficient to support judgment in her favor. See *Anderson v. Liberty Lobby, Inc.* (1986), 477 U.S. 242, 249–250, 106 S.Ct. 2505, 2510–2511, 91 L.Ed.2d 202, 212.

In order for a plaintiff to prevail in a survival and wrongful death action, she must show that the defendant owed the decedent a duty, that the defendant breached that duty, and that the defendant's breach of duty proximately caused the decedent's injuries and death. *Feldman v. Howard* (1967), 10 Ohio St.2d 189, 193, 39 O.O.2d 228, 230–231, 226 N.E.2d 564, 566–567; *Oiler v. Willke* (1994), 95 Ohio App.3d 404, 408, 642 N.E.2d 667, 669–670, citing *Littleton v. Good Samaritan Hosp. & Health Ctr.* (1988), 39 Ohio St.3d 86, 529 N.E.2d 449. Defendants have argued that they were entitled to judgment as a matter of law on the issue of whether they breached a duty to Derek Garcia.

The duty that a landowner owes to someone who enters his land depends on whether that person is a licensee, invitee, or trespasser. *Rinehart v. Fed. Natl. Mtge. Assn.* (1993), 91 Ohio App.3d 222, 229, 632 N.E.2d 539, 543–544. A trespasser is one who enters private property of another for his own purposes and convenience and without invitation, inducement, or express or implied authorization. *McKinney v. Hartz & Restle Realtors, Inc.* (1987), 31 Ohio St.3d 244, 247, 31 OBR 449, 451–452, 510 N.E.2d 386, 389. Derek Garcia entered the private property behind Family's florist shop and landscaping business without invitation or permission. He was, therefore, a trespasser.

Generally, a landowner owes an undiscovered trespasser no duty except to refrain from willful or wanton misconduct. *McKinney,* 31 Ohio St.3d 244, 246, 31 OBR 449, 450–451, 510 N.E.2d 386, 388–389; *Mima v. Akron* (1986), 31 Ohio App.3d 124, 126, 31 OBR 211, 212–213, 508 N.E.2d 974, 976–977. Willful misconduct "involves an intent, purpose or design to injure." *McKinney,* 31 Ohio

St.3d 244, 246, 31 OBR 449, 451, 510 N.E.2d 386, 388–389, quoting *Denzer v. Terpstra* (1934), 129 Ohio St. 1, 1 O.O. 303, 193 N.E. 647, paragraph two of the syllabus. Wanton misconduct occurs when one "fails to exercise any care whatsoever toward those to whom he owes a duty of care, and his failure occurs under circumstances in which there is great probability that harm will result." *McKinney* at 246, 31 OBR at 451, 510 N.E.2d at 389, quoting *Hawkins v. Ivy* (1977), 50 Ohio St.2d 114, 4 O.O.3d 243, 363 N.E.2d 367, syllabus.

■ Plaintiff has not suggested that defendants engaged in willful or wanton misconduct in this case. Rather, she has argued that the general rule regarding a landowner's duty to a trespasser was inapplicable in this case and that defendants owed Derek Garcia a duty of ordinary care. Plaintiff has relied primarily on two decisions of the Ohio Supreme Court as support for her argument.

In *Elliott v. Nagy* (1986), 22 Ohio St.3d 58, 22 OBR 77, 488 N.E.2d 853, the Ohio Supreme Court considered what duty a landowner owed a nineteen-month-old child who wandered onto the landowner's property and drowned in his above-ground swimming pool. The plaintiff in *Elliott* urged the Supreme Court to adopt the attractive nuisance doctrine and to hold, pursuant to that doctrine, that the landowner owed the decedent a duty "to use ordinary care to prevent injury to child trespassers." *Id.* at 60, 22 OBR at 78, 488 N.E.2d at 855. The Supreme Court refused to do so:

"We thus decline appellant's invitation to adopt the attractive nuisance doctrine and conclude that summary judgment was proper. We hold that the attractive nuisance doctrine will not extend tort liability to the owner of a home swimming pool where the presence of a child who was injured or drowned therein was not foreseeable by the property owner." *Id.* at 61, 22 OBR at 79, 488 N.E.2d at 856.

While plaintiff has acknowledged that the Supreme Court refused to adopt the doctrine of attractive nuisance in *Elliott,* she has asserted that the quoted language from *Elliott* implied that the landowner would have owed the decedent a duty of ordinary care if the decedent's presence on the property had been foreseeable. She has further argued that her interpretation is supported by the Supreme Court's opinion in the second case on which she primarily relies, *Wills v. Frank Hoover Supply* (1986), 26 Ohio St.3d 186, 26 OBR 160, 497 N.E.2d 1118.

In *Wills,* the Supreme Court considered whether the lessee of a parcel of land owed a duty of ordinary care to a nine-year-old trespasser. The lessee had placed an oil well and pump on the property. Although children were never given permission to be on the land, it was common knowledge that they often were. The child at issue was injured when his pant leg became enmeshed in a moving part of the pump. The Supreme Court determined that the lessee owed a

duty of ordinary care to the child based upon two factors. The first factor was the defendant having placed the pump on the property:

" 'Where the statical condition of premises is made perilous by the active and negligent operation of *apparatus* thereon by the person owning or controlling the same, a liability arises for injury resulting therefrom.' (Emphasis added.)" *Wills*, 26 Ohio St.3d at 190, 26 OBR at 163, 497 N.E.2d at 1121, quoting *Coy v. Columbus, Delaware & Marion Elec. Co.* (1932), 125 Ohio St. 283, 181 N.E. 131, paragraph one of the syllabus. The second factor was that it was foreseeable that children would be present on the property. The Supreme Court found persuasive the plaintiff's argument that the lessee had a duty to fence or otherwise enclose the premises, or at least warn of the pump's presence, because of the lessee's knowledge that "young children were regularly on the property and that they would not be mature enough to appreciate the dangers inherent to the pumping equipment." *Wills*, 26 Ohio St.3d at 190, 26 OBR at 163, 497 N.E.2d at 1121–1122.

The lessee in *Wills* apparently argued that the Supreme Court's rejection of the doctrine of attractive nuisance in *Elliott* meant that the only duty it owed the child injured by its pump had been to refrain from willful or wanton misconduct. In distinguishing the facts in *Elliott* from those in *Wills*, the Supreme Court focused on foreseeability:

"We find [the child's] argument persuasive, notwithstanding [the lessee's] assertion that this court's decision in *Elliott* * * * is controlling. In [*Elliott* ], * * * as in the other cases cited as support by the [lessee], the linchpin was foreseeability. While declining to adopt the doctrine of attractive nuisance (which is not necessary in deciding this case), this court stated * * * [quoting the above *Elliott* language regarding foreseeability of child's presence]." *Wills*, 26 Ohio St.3d at 190–191, 26 OBR at 164, 497 N.E.2d at 1122.

Plaintiff has relied upon this language from *Wills* distinguishing its facts from those in *Elliott* to argue that the only significant difference between the two cases was that the presence of the nineteen-month-old child was not foreseeable in *Elliott*, while the presence of the nine-year-old child was foreseeable in *Wills*. While that was a significant difference between the two cases, it was not the only significant difference.

In *Wills*, liability was founded upon foreseeability plus the "active and negligent operation of apparatus." The presence of the dangerous apparatus imposed a duty of ordinary care to foreseeable trespassers without adoption of the attractive nuisance doctrine. In *Elliott*, there had been no dangerous apparatus. Pursuant to the general rule, therefore, the landowner owed only foreseeable trespassers a duty to refrain from willful or wanton misconduct. In order to hold the landowner to a higher standard, the Supreme Court would have had to adopt

the attractive nuisance doctrine. Inasmuch as foreseeability is an essential element of the attractive nuisance doctrine, however, the adoption of that doctrine would not have changed the outcome in *Elliott*. Restatement of the Law 2d, Torts (1965) 197, Section 339(a). The presence of the nineteen-month-old child on the landowner's property was not foreseeable. That is why the Supreme Court, in *Wills*, described foreseeability as the linchpin of its decision in *Elliott*. The Supreme Court concluded in *Elliott* that that case presented "no compelling reasons meriting the adoption of the attractive nuisance doctrine" because the result in that case was not dependent upon that adoption. *Elliott*, 22 Ohio St.3d at 61, 22 OBR at 79, 488 N.E.2d at 855.

■ Although plaintiff presented sufficient evidence in this case to raise a genuine issue of whether it was foreseeable that Derek Garcia would trespass on Family's property, foreseeability alone would not change the standard of care owed him. There was no dangerous apparatus in operation on Family's property. In order to impose a higher standard of care on defendants, therefore, it would be necessary for this court to adopt the attractive nuisance doctrine. Inasmuch as the Supreme Court has not adopted that doctrine, it would be inappropriate for this court to do so. See *McKinney v. Hartz & Restle Realtors, Inc.* (1987), 31 Ohio St.3d 244, 247, 31 OBR 449, 451–452, 510 N.E.2d 386, 389. Defendants did not owe Derek Garcia a duty of ordinary care.

Plaintiff has argued that a higher standard applies in this case without the need for adoption of the attractive nuisance doctrine. As support for this argument, she has cited the decision of the Second District Court of Appeals in *Phillips v. Dayton Power & Light Co.* (1994), 93 Ohio App.3d 111, 637 N.E.2d 963. In that case, a teenage boy was injured while climbing on an electric utility tower. The court determined that it was foreseeable that the victim would climb on the tower because of the defendant's knowledge of other incidents of people climbing on its towers. *Phillips*, however, is an example of application of the dangerous-apparatus rule. In fact, *Coy v. Columbus, Delaware & Marion Elec. Co.* (1932), 125 Ohio St. 283, 181 N.E. 131, upon which the Supreme Court relied in deciding *Wills*, was an action brought on behalf of a six-year-old boy who had been injured by electric shock from a high-voltage transformer.

Plaintiff has also relied upon the decision of the Second District Court of Appeals in *Smith v. Std. Oil Co.* (Feb. 13, 1989), Montgomery App. No. CA 11184, unreported, 1989 WL 13549. In that case, the court held that the defendant owed a trespassing child a duty of ordinary care, although the child had not been injured by a dangerous apparatus. This court declines to follow that decision because it appears to be inconsistent with decisions of the Ohio Supreme Court.

Defendants owed Derek Garcia a duty to refrain from willful or wanton misconduct. Inasmuch as plaintiff has not suggested that they engaged in willful

or wanton misconduct toward him, there were no genuine issues of material fact and defendants were entitled to judgment as a matter of law. Plaintiff's assignment of error is overruled.

## III

Plaintiff's assignment of error is overruled. The judgment of the trial court is affirmed.

*Judgment affirmed.*

REECE, P.J., and SLABY, J., concur.