OPINION
{¶ 1} This appeal arises from the Trumbull County Court of Common Pleas entering summary judgment in favor of appellee, James Pugh, with respect to the claim for personal injuries of appellant, Lamar Mitchell. For the reasons indicated herein, we affirm the order granting Pugh's motion for summary judgment.
 {¶ 2} On December 20, 2000, Mitchell, who was seventeen years old at the time, attempted to rob the RBG Music store in Warren, Ohio. The music store was owned and operated by Pugh.
 {¶ 3} Mitchell entered the store ostensibly to purchase cassettes, and when Pugh tried to assist him with his purchase, Mitchell brandished a firearm, pointed it at Pugh's head, and demanded that Pugh turn over all the store's money to him. Following a struggle in which Pugh fell to the floor, Pugh promised Mitchell to give him his money. While Mitchell still had his firearm pointed at Pugh, Pugh went to his cash register and retrieved his own firearm. After viewing Pugh's firearm, Mitchell attempted to run from the store, but was apprehended before he was able to exit the store. Pugh took Mitchell's weapon from him and ordered him to lie down while Pugh called the police. Unfortunately, the phone did not work, so, in order to use another phone at another location in the store, Pugh ordered Mitchell to pull his pants down to his ankles, so that he could not escape. At this time, Pugh had his firearm in his right hand in a cocked position. Shortly thereafter, according to Pugh, "he was trying to get [his pants] down, and I decided to try to help him. I stuck my hands in his pockets and that's when the gun went off," the bullet striking Mitchell in his left buttock.
 {¶ 4} Mitchell was convicted of aggravated robbery, with a firearm specification, and was sentenced to prison for six years.
 {¶ 5} Mitchell filed suit, alleging that Pugh "negligently fired a pistol" striking Mitchell, causing Mitchell to sustain medical expenses, pain, and suffering.
 {¶ 6} The court below entered summary judgment in favor of Pugh and dismissed Mitchell's complaint. Mitchell has appealed to this court, asserting a single assignment of error:
 {¶ 7} "The trial court erred, to the detriment of appellant, by granting appellee's motion for summary judgment."
 {¶ 8} To determine whether the trial court was correct in granting a motion for summary judgment, we must examine the record in the light most favorable to the party opposing the motion and determine whether the requirements of Civ.R. 56(C) have been satisfied.[1] Thus, there must be no genuine issue of material fact; the party moving for summary judgment must be entitled thereto as a matter of law; and reasonable minds can come to only one conclusion, which is adverse to the party opposing the motion.[2]
 {¶ 9} In his complaint, Mitchell alleges that Pugh was negligent, and that such negligence was the cause of his injuries. If Pugh committed negligence, then he violated a duty of care to Mitchell. "To succeed in an action for negligence, a plaintiff must show the existence of a duty of care, a breach of the duty, and an injury to the plaintiff, which was proximately caused by the breach."[3] Moreover, "[t]he status of the person injured by a third party on an owner's premises determines the scope and extent of the owner's duty to the injured person. * * * Under Ohio law, an owner's duty of care depends on whether the injured person is an invitee, a licensee, or a trespasser."[4] Thus, it is critical in Ohio when determining the standard of care owed to a person who enters upon another's premises to first ascertain that person's status as an invitee, licensee, or a trespasser: "Ohio law continues to recognize the distinction between invitees, licensees, and trespassers rather than a uniform standard of care applicable to all who enter upon another's property."[5]
 {¶ 10} Mitchell entered Pugh's premises to rob him. He was, therefore, a trespasser, not an invitee or licensee. "A trespasser is one who, without express or implied authorization, invitation or inducement, enters private premises purely for his own purposes or convenience."[6]
As a trespasser, "the only duty owed to a trespasser is to refrain from willful or wanton misconduct."[7] Willful conduct "involves an intent, purpose or design to injure."[8] Wanton conduct occurs when one "fails to exercise any care whatsoever toward those to whom he owes a duty of care, and his failure occurs under circumstances in which there is a great probability that harm will result * * *."[9]
 {¶ 11} In juvenile court, Pugh was asked whether he intended to shoot Mitchell, to which he answered, "[n]o, I didn't. I had the situation totally under control. It was my motion and lack of thinking that caused the gun to fire, yes." At the same hearing, Pugh testified that he told the police, who were jostling the seventeen-year-old Mitchell after they arrived, to "[b]e careful, be easy" on him. Pugh also engaged in a brief conversation with Mitchell after Mitchell was shot, and asked him who had set him up to commit this crime. Nothing in the record supports the proposition that Pugh intentionally shot Mitchell. Mitchell offered nothing in the record contra to the idea that Pugh shot Mitchell accidentally. An accidental shooting implies negligence on the part of Pugh, not willful and wanton misconduct. The duty of care owed to Mitchell, to refrain from committing willful and wanton misconduct that could injure him, was not violated, according to all the evidence we are presented in the record. Mitchell says as much in his complaint, that the shooting was accidental, and reiterates this position in his brief in this court. We are left with no other conclusion than Pugh is entitled to summary judgment, as a matter of law, because there was no legal duty owed to Mitchell that he violated. Further, as stated above, Mitchell offered no contrary evidence to this conclusion. Reasonable minds, therefore, can come to but one conclusion, and that conclusion is adverse to Mitchell.
 {¶ 12} Mitchell argues that the fact that Pugh detained Mitchell in his store as he was trying to escape is a circumstance that transformed Pugh's conduct into willful and wanton misconduct. To the contrary, the detention of Mitchell by Pugh is statutorily protected as long as it is reasonable under the circumstances:
 {¶ 13} "(A) A merchant, or his employee or agent, who has probable cause to believe that items offered for sale by a mercantile establishment have been unlawfully taken by a person, may, for the purposes set forth in division (C) [to recover property, to cause an arrest to be made by the police, or to obtain an arrest warrant] of this section, detain the person in a reasonable manner for a reasonable length of time within the mercantile establishment or its immediate vicinity."[10]
 {¶ 14} Mitchell's assignment of error is without merit.
 {¶ 15} For the reasons stated, the judgment below is affirmed.
Ford, P.J., O'Toole, J., concur.
[1] Carswell v. Toledo Edison Co. (1988), 53 Ohio App.3d 82,84.
[2] Harless v. Willis Day Warehousing Co. (1978), 54 Ohio St.2d 64, 66.
[3] Heffern v. Univ. of Cincinnati Hosp. (2001), 142 Ohio App.3d 44,51, citing Menifee v. Ohio Welding Products, Inc. (1984),15 Ohio St.3d 75, 77.
[4] (Citations omitted.) Id. at 52.
[5] Carswell v. Toledo Edison Co., supra, paragraph one of the syllabus, and at 84, citing McKinney v. Hartz Restle Realtors, Inc.
(1987), 31 Ohio St.3d 244; Elliott v. Nagy (1986), 22 Ohio St.3d 58; andBrooks v. Norfolk Western Ry. Co. (1976), 45 Ohio St.2d 34.
[6] McKinney v. Hartz Restle Realtors, Inc., supra, at 246.
[7] Easterling v. Am. Olean Tile Co., Inc. (1991), 75 Ohio App.3d 846,853, citing Preston v. Baltimore Ohio RR. Co. (1988),49 Ohio App.3d 70, 73; and Mima v. Akron (1986), 31 Ohio App.3d 124,126.
[8] Denzer v. Terpstra (1934), 129 Ohio St. 1, paragraph two of the syllabus.
[9] Hawkins v. Ivy (1977), 50 Ohio St.2d 114, syllabus.
[10] R.C. 2935.041(A).