OPINION
This matter involves a timely appeal from an amended judgment entered on February 22, 2001, by the Mahoning County Court of Common Pleas granting summary judgment in favor of Appellee, Ohio Edison and dismissing the negligence suit filed by Dameco Coney, a minor, and his mother, Sonia Coney. Ohio Edison has also filed a cross-appeal, challenging the trial court's decision entered on October 31, 2000, granting co-defendant Time Warner's motion for summary judgment with respect to Ohio Edison's derivative claim. Based on the record, this Court concludes that genuine issues of material fact remain to be resolved which precluded summary judgment. We must also reverse the trial court's decision to grant Time Warner's motion for summary judgment on Ohio Edison's derivative claim against it because there exist disputed facts sufficient to preclude summary judgment on that issue as well.
On December 2, 1996, Dameco Coney fractured his femur when he tripped over a metal object partially buried next to a utility pole in the Kimmelbrook housing development located in Youngstown. The object, or anchor as the parties call it, looks like a heavy metal rod, part of which is drilled into the ground. The portion that remains above ground consists of a metal loop resembling the eye of a very large needle. A steel "guy wire" is typically wrapped around the loop, then attached to an adjacent utility pole. Ideally, the anchor and the wire help support and secure the pole. (Ohio Edison's Brf. p. 3, n. 1). The utility pole belongs to Ohio Edison.
Dameco Coney tripped over the anchor as he ran across a grassy median that divided the street and sidewalk from a small parking lot where his mother waited for him in a parked car. (Appellants' Brf. p. 4). For some time before the incident, the guy wire running from the utility pole to the anchor had become detached from the anchor. The anchor, the protrusion of which was not particularly large, was partially obstructed by grass and was difficult to see. (Straub Depo. p. 11; Cummings Depo. p. 10 Depo. Ex. A).
The incident occurred just after the youngster, who was five years old at the time, had jumped off the school bus and was in the process of running to his mother's car in the parking lot. The Coneys were longtime residents of the Kimmelbrook development, a property that was maintained by Youngstown Metropolitan Housing Authority ("YMHA").
The Coneys filed a lawsuit against Ohio Edison, Time Warner, YMHA, and Ameritech alleging negligence in connection with the maintenance of the anchor and the surrounding area. In their answers all defendants denied negligence. In addition, they each filed derivative cross-claims against the other seeking indemnification and alleging that, if it was determined that any of them were negligent, such negligence was secondary and passive to that of the other defendants. In essence, the defendants all denied ownership or at least responsibility for the anchor, and blamed each other for the anchor's condition at the time Dameco Coney was injured.
On September 27, 2000, the trial court sustained the Coneys' request to voluntarily dismiss Ameritech and Time Warner. Ohio Edison filed a motion for summary judgment against the Coneys, contending that the evidence was insufficient to generate a genuine issue of material fact that the anchor was owned, maintained, used, or installed by Ohio Edison or that Edison had any duty in connection with the anchor.
On October 31, 2000, the trial court granted Ohio Edison's motion for summary judgment against the Coneys', concluding that, "Defendant Ohio Edison's affidavit in support of [its] Motion for Summary Judgment is unrebutted by any credible evidence offered by Plaintiff in response." In that order, the trial court also granted Time Warner's motion for summary judgment with respect to Ohio Edison's cross-claim. According to the trial court, summary judgment on the cross-claim was proper because the Coneys had already voluntarily dismissed Time Warner. (Judgment Entry, Oct. 31, 2000).
On November 21, 2000, the trial court entered an order briefly reconsidering and then affirming its previous order. The court stated as follows:
"There is no proof offered by Plaintiff, either circumstantial or direct in character, that would allow any reasonable minds to conclude that the anchor in question was owned, maintained, used, or installed by Ohio Edison nor that Ohio Edison had any duty regarding such anchor." (Judgment Entry, Nov. 21, 2000).
The Coneys filed their notice of appeal to this Court on November 29, 2000. That order, however, was not final and appealable as required by Civ.R. 54(B) because it did not reflect that all claims involving all parties to the suit had been resolved. On January 23, 2001, this Court gave the parties thirty days to either obtain an amended entry conforming to the rule or to otherwise demonstrate that the October decision to grant summary judgment was a final appealable order.
In February of 2001, the Coneys voluntarily dismissed YMHA. The trial court issued an Amended Judgment Entry on February 22, 2001. That order was identical to its order of November 21, 2000, except that it included the following: "The Court further finds there is no just reason for delay and this is a final appealable order." On February 28, 2001, the Coneys again filed an appeal.
The Coneys' sole assignment of error alleges that,
"The Trial Court committed prejudicial error when it sustained Appellee Ohio Edison's Motion for Summary Judgment on October 31, November 21, 2000 and February 22, 2001."
Dameco and his mother argue that the record establishes that genuine issues of material fact exist in this matter sufficient to preclude summary judgment. Ohio Edison counters that summary judgment was proper because the Coneys failed to demonstrate that Edison owned, and consequently had responsibility for, the anchor over which Dameco tripped. Ohio Edison further insists that regardless whether the company owned the anchor, the Coneys failed to show that it had possession and control over the anchor and surrounding premises. Moreover, according to Ohio Edison, even if it had a duty to maintain the anchor in a safe condition, it was not liable for what occurred because the Coneys did not show that Ohio Edison had notice of the condition of the anchor before Dameco fell.
From the record, this Court concludes that sufficient evidence exists so that reasonable minds could find that Ohio Edison was the owner of the anchor, that Edison breached its duty in connection therewith and that the occurrence that precipitated this lawsuit was reasonably foreseeable to Edison under the circumstances. Consequently, we can only determine that summary judgment was improper.
An appellate court reviews de novo a trial court's decision to grant summary judgment. Wilson v. Lafferty Volunteer Fire Department (November 29, 2001), 7th Dist. No. OO BA 29, at *6; quoting Brown v. Scioto Bd. ofCommrs. (1993), 87 Ohio App.3d 704, 711. Neither the reviewing court nor the trial court, "may weigh the proof or choose among reasonable inferences in deciding whether summary judgment should be granted."Wilson, at *7, quoting Perez v. Scripps-Howard Broadcasting Co. (1988),35 Ohio St.3d 215, 218.
Under Civ.R. 56(C), summary judgment is not proper unless the trial court determines that: (1) no genuine issue of material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence that reasonable minds can come to only one conclusion, and viewing the evidence most strongly in favor of the opposing party, the conclusion is adverse to that party. Gross v.Fizet (December 18, 2001), 7th Dist. No. 00-C.A.-250, at *7; quoting,Temple v. Wean United, Inc. (1977), 50 Ohio St.2d 317, 327.
Initially, the party seeking summary judgment, Ohio Edison, must inform the trial court of the basis for its motion and identify the parts of the record that demonstrate it is entitled to judgment as a matter of law.Vahila v. Hall (1997), 77 Ohio St.3d 421, quoting Dresher v. Burt
(1996), 75 Ohio St.3d 280, 293. Ohio Edison must be able to point to evidentiary materials of the type listed in Civ.R. 56(C) that the trial court is to consider before rendering summary judgment. Dresher, at 293.
Where the initial burden is met, the opposing party must then counter by demonstrating that there are genuine issues for trial. Lovejoy v.Westfield Nat. Ins. Co. (1996), 116 Ohio App.3d 470, 474. To withstand summary judgment, the Coneys are required to specifically place before the court facts that support the elements of the claim it intends to prove. Dresher, at 293. The trial court must then examine the record in a light most favorable to the party opposing summary judgment. Civ.R. 56(C). Only when such an examination reveals no disputed factual issues is summary judgment a proper device for resolving a case. Nice v.Marysville (1992), 82 Ohio App.3d 109, 116-117.
The Coneys' complaint sounded in negligence. To prove negligence, a plaintiff must establish the existence of a duty, a breach of the duty and some injury proximately resulting from the breach. Menifee v. OhioWelding Products, Inc. (1984), 15 Ohio St.3d 75. To prevail against a defendant's motion for summary judgment in a negligence case, a plaintiff must first identify the extent of the duty that defendant owed him. The evidence must be sufficient, when considered most favorably to the plaintiff, to allow reasonable minds to infer that the duty was breached and that breach of that duty was the proximate cause of the plaintiff's injury. Sanders v. Anthony Allega Contractors (Dec. 30, 1999), 8th Dist. No. 74953; citing, Feichtner v. Cleveland (1995), 95 Ohio App.3d 388,394.
This case turns on whether Ohio Edison owed any duty to the Coneys in connection with the condition or maintenance of the anchor. Ohio Edison maintains that it had no duty to Dameco and his mother with respect to the anchor. Our Supreme Court has held that, "[a] power company erecting and maintaining equipment, including poles and wires, upon or along a public road, for the purpose of transmitting and distributing electrical current, is bound to exercise the highest degree of care consistent with the practical operation of such business in the construction, maintenance and inspection of such equipment, and is responsible for any conduct falling short of that standard." Hetrick v. Marion-Reserve Power Co. (1943), 141 Ohio St. 347, 355. More recently, the Ohio Supreme Court has stressed that a, "power company is responsible for any conduct that falls short of [the aforementioned] standard." Otte v. Dayton Power LightCo. (1988), 37 Ohio St.3d 33, 38.
While conceding that it owes consumers the, "highest degree of care `consistent with the practical operation of [its] business,'" Ohio Edison nevertheless argues that it owed no duty in this matter because it did not have possession or control over the anchor. (Ohio Edison Brf. p. 13, citing Phillips v. Dayton Power Light Co. (1994), 93 Ohio App.3d 111,116). In any event, Ohio Edison maintains that even if the anchor did belong to the company, Dameco's injury was not reasonably foreseeable because Edison had no notice that the anchor's condition presented a danger.
Based on the record, we disagree with Ohio Edison's contentions. A reasonable jury could find from the evidence presented that the in-ground anchor, whose sole purpose is to support and balance Ohio Edison's utility pole and its electrical wires, belonged to Ohio Edison. Reasonable minds could find that Ohio Edison had possession and control over the anchor and owed the Coneys a duty to maintain the anchor in such condition that it did not pose an unreasonable risk of danger to others.
There is no dispute that Dameco Coney sustained injury. There also appears to be little controversy over the Coneys' claim that Dameco sustained the injury after tripping over an in-ground anchor juxtaposed to a utility pole belonging to Ohio Edison. This leads us to a determination as to whether Ohio Edison owed any duty to the Coneys with respect to the maintenance or condition of the anchor. Our analysis first turns on the question of which company owned and therefore possessed and controlled the anchor. The next question is whether, because of that ownership, Ohio Edison had a duty to maintain the anchor in a reasonably safe condition.
In granting summary judgment in this case, the trial court simply held that, "Ohio Edison's affidavit in support of Motion for Summary Judgment is unrebutted by any credible evidence * * *." (Judgment Entry, Oct. 31, 2000) (emphasis added). In a subsequent order, the trial court more specifically observed that the Coneys failed to introduce any evidence, "* * * that would allow reasonable minds to conclude that the anchor in question was owned, maintained, used or installed by Ohio Edison nor that Ohio Edison had any duty regarding such anchor." (Judgment Entry, Nov. 21, 2000).
The record reflects that the pole to which the anchor in this case was supposed to be wired belonged to Ohio Edison. (Straub Depo., p. 7). The record further reflects that at the time Dameco tripped over the anchor, three utility companies used the pole. (Shevetz Depo., p. 35; Ohio Edison Brf. p. 5, fn. 5). Those three utility companies; Ohio Edison, Time Warner, and Ameritech, all denied owning the anchor. Nevertheless, a jury could reasonably find notwithstanding the denials, that Ohio Edison, the company most closely linked to the pole, was the owner of the anchor.
Contrary to the trial court's findings, this Court notes that the record is replete with evidence, albeit contradictory, concerning the identity of the company that installed, owned and, therefore, had responsibility for the maintenance and control of the anchor. In a transparent effort to avoid responsibility for what occurred in this case, each company was quick to identify the other as the anchor's probable owner. The record includes the depositions and affidavits of numerous witnesses, most of whom had contradictory evidence to offer about who owned, installed and was supposed to maintain the anchor.
Long-time Ohio Edison employee, Michael J. Shevetz, testified that the anchor at issue in this case was not of the style that Edison typically used. (Shevetz Depo., p. 34). A more complete review of Shevetz's testimony, however, demonstrates that he was not even sure that the anchor that he examined was the one over which Dameco Coney tripped. (Shevetz Depo., pp. 9, 35). Nevertheless, Shevetz relayed that Ohio Edison had a written contract with YMHA to provide lighting in the Kimmelbrook area, and that Edison had been providing electricity to Kimmelbrook for many years. (Shevetz Depo., p. 12).
Shevetz also acknowledged that the poles in the Kimmelbrook area belonged to Ohio Edison and were installed by that company, as well. (Shevetz Depo., p. 13). Shevetz explained that Ohio Edison ran electricity to the area through high tension wires strung from pole to pole. Edison would then run what Shevetz called a "guy wire" from the pole and secure it to the ground through an anchor. Shevetz indicated that the guy wires run from the pole to the anchor and, "hold the angles," ideally keeping the pole erect. (Shevetz Depo., p. 13). He also stated that Ohio Edison did not routinely inspect the guy wires and anchors to ensure that they remained properly attached to the poles. (Shevetz Depo., p. 14). Critically, Shevetz testified that before any other utility company could attach its hardware to Ohio Edison's poles, it had to first obtain written permission from Edison. (Shevetz Depo., p. 14). From this testimony, it can be inferred that Ohio Edison maintained primary control of the pole and therefore had responsibility for the anchor to which that pole was supposed to be secured.
Another deponent, James E. Cox, of Ameritech, stated that the pole was owned by Ohio Edison. (Cox Depo., p. 9). Cox also stated that he had never seen the anchor that Dameco tripped over. (Cox Depo., p. 8). Cox stated that in order for Ameritech to have used the pole for Ameritech attachments, the pole would have had holes drilled through the pole at the 22 — 24 foot range. (Cox Depo., p. 9). The pole located at the address of the incident did not have any such holes. (Id.) Cox stated that the pole did have a hole at the top, "where Ohio Edison may or may not have put a guy wire." (Cox Depo., p. 19).
Mark Straub, a former Director of Development for YMHA, also indicated that Ohio Edison was responsible for the pole. (Straub Depo., p. 7). Straub based his statements on the existence of a contract between YMHA and Ohio Edison to furnish the lighting system. (Straub Depo., p. 8). Straub also remembered some documentation about a cable that was not ground anchored, but had been wrapped around the pole. (Straub Depo., p. 8). Straub indicated that he arranged to have the anchor involved in this incident removed from the ground in March or April of 1997. (Straub Depo., p. 11).
Curtis Cummings, a maintenance foreman at YMHA, stated that Ohio Edison, Time Warner and Ameritech all disclaimed ownership of the pole. (Cummings Depo., p. 9). Cummings testified that the wire that should have run from the pole to the anchor had been detached for a considerable period of time before the incident. According to Cummings, he was worried that children living at Kimmelbrook would attempt to swing from the detached guy wire and injure themselves. (Id.) Cummings stated that between 1985 and 1990, he contacted Ohio Edison and asked it to repair the hanging wire and reattach it to the anchor. (Cummings Depo., pp. 9, 10, 11). He also stated that he remembered that at one time the wire had been attached to the anchor. (Cummings Depo., p. 11).
When reviewing the evidence, it is clear that there are genuine issues of material fact existing as to the essential elements of the Coneys' negligence claim, specifically, as to the element of duty. Dresher,75 Ohio St.3d at 293. Ohio Edison makes much of the fact that Sonia Coney could not identify whether Ohio Edison or Ameritech was the company that owned and installed the anchor. (Sonia Coney Depo. p. 18). This argument, though, is somewhat disingenuous given that Edison installed the pole to which the anchor was secured in the first place. Since the anchor was positioned next to the pole exclusively for the purpose of keeping the Edison pole erect, it is reasonable to infer that the anchor, as well, belonged to Edison.
The record also reflects a genuine issue of fact precluding summary judgment with respect to Ohio Edison's alternative claim that even if it did own the anchor, it had no prior knowledge of its dangerous condition and therefore, could not be held liable. YMHA employee Curtis Cummings said that he had contacted Ohio Edison several times between 1985 and 1990 to advise them that the guy wire no longer secured the pole to the anchor and shared his concerns that children might suffer injury as a result. (Cummings Depo. pp. 9-10, 44-47). Such testimony clearly rebuts Ohio Edison's contention that it did not know about the condition of the anchor prior to the Dameco Coney's injury and creates a material issue of fact to preclude summary judgment.
To survive summary judgment in this case, the Coneys merely needed to present evidence which, if believed, would show that Ohio Edison breached its duty and thereby proximately caused Dameco's injury. The Coneys have presented sufficient evidence from which a reasonable jury could have reached such a conclusion.
In Phillips, supra, the reviewing court concluded that summary judgment was improper where a genuine issue of material fact existed concerning whether it was sufficiently foreseeable to a power company that a teenager would climb its electrical utility tower located in teenage friend's back yard rendering the power company negligent in not replacing signs warning of high voltage or in failing to attach guards to tower to prevent persons from climbing it. Id. at 118.
Here, there is no dispute that Dameco tripped over and injured himself on the anchor. There is, however, some dispute with respect to which utility owned, maintained and controlled the anchor. Such a dispute necessarily creates a genuine issue of material fact. The trial court's initial order granting Ohio Edison summary judgment points out another error on review. In its first order, the trial court found that the Coneys had failed to produce any "credible evidence" to rebut Ohio Edison's position. Since the trial court is not entitled to make credibility determinations in resolving a motion for summary judgment, it had no authority to make a such finding. Accordingly, the Coneys' sole assignment of error is meritorious.
For their cross-appeal, Ohio Edison asserts two cross-assignments of error. Since we have concluded that this matter should not have been resolved by way of summary judgment, we now turn to those cross-assignments of error.
In its first cross-assignment of error, Ohio Edison contends as follows:
"The Trial Court erred to the prejudice of Ohio Edison Company when it granted summary judgment to Time Warner without ever having granted leave to Time Warner to file a motion for summary judgment or giving notice to Ohio Edison that Time Warner's motion was being considered."
Ohio Edison maintains that the trial court erroneously entertained Time Warner's motion for summary judgment because Time Warner failed to first seek leave to file it. Edison bases this assignment of error on Civ.R. 56(A), which mandates that, ". . . if the action has been set for a pre-trial or trial, a motion for summary judgment may be made only with leave of court." (Ohio Edison's Brf. p. 18). Since the trial court did not explicitly grant Time Warner leave to file its summary judgment motion, Ohio Edison now claims that the court erred in entertaining the motion in the first place. This argument is specious.
Ohio Edison correctly notes that Civ.R. 56 provides that a party may ask for leave of court when requesting a motion for summary judgment after the action has been set for pretrial or trial. Nevertheless, the trial court has discretion to waive this requirement. Indermill v. UnitedSavings (1982), 5 Ohio App.3d 243, 244. Leave of court may be express or implied by the action of the court. Stewart v. Cleveland ClinicFoundation (1999), 136 Ohio App.3d 244, 259. We reiterated these principles only recently when addressing an identical claim in Gross v.Fizet, supra at *14.
Furthermore, any claim that the trial court abused its discretion in granting leave to file after an action is set for trial must show that the court's order was unreasonable, arbitrary, or capricious. ParamountSupply Co. v. Sherlin Corp. (1984), 16 Ohio App.3d 176, 179.
The record indicates that Time Warner filed its motion for summary judgment some three years after the original complaint was filed. All three utility companies had simultaneously been in depositions and all three utility companies were aware that each respective company was brought in, dismissed or rejoined. Ohio Edison had more than five months to prepare and argue Time Warner's motion for summary judgment. In that five-month period, Ohio Edison filed a cross-claim against Time Warner.
As we find in the record no abuse of the trial court's discretion in allowing Time Warner to file its summary judgment motion without first seeking leave to do so, the first cross-assignment of error is overruled.
Next, Ohio Edison alleges:
 "The Trial Court prejudicially erred when it granted summary judgment to Time Warner upon Ohio Edison's Crossclaims [sic] where there was competent evidence in the record from which reasonable minds could as readily conclude that the anchor over which Appellant, Dameco Coney, allegedly fell was owned by Time Warner."
Here, Edison challenges the trial court's decision to grant summary judgment in favor of Time Warner. According to Ohio Edison, there is a genuine issue of material fact as to whether Time Warner, and not Edison, owned the anchor that is the subject of this dispute.
For the same reasons we detailed in our analysis of the Coneys' sole assignment of error, we agree that the many factual disputes of record foreclose resolution of this case on summary judgment. We must conclude that Ohio Edison's second assignment of error as to this issue has merit and warrants reversal.
Ohio Edison directs this Court to the deposition of Edison employee Michael Shevetz, who testified that the anchor was used by Time Warner and did not belong to Edison. (Shevetz Depo., p. 9). According to Shevetz's examination of the anchor and his familiarity with those commonly used by utilities, the anchor at the center of this dispute resembled those used by "cable TV" and did not look like the ones used by Edison. Shevetz also indicated that in his experience, the anchor did not look like those used by Ohio Bell [Ameritech]. (Id. pp. 9, 10.)
In contrast, Time Warner employee Cox stated that he has seen the anchors used by Time Warner and the anchor depicted in the photographs on record did not look like any anchor used by Time Warner. (Cox Depo., p. 23). Cox went on to state that the cable company's anchors were smaller, more round, and only have a single position at the top. (Id.) Cox also believed that the anchor was not the type the "telephone company" used. (Cox Depo., p. 24).
YMHA maintenance foreman Cummings testified that he never compared anchors, yet the difference he did notice was that some protruded farther out of the ground than others. (Id. p. 19.) He also testified that the telephone company and the cable company initially identified each other as probable owners of the pole. (Cummings Depo., pp. 27, 28, 29).
Such testimony depicts an obvious factual dispute that must be sent to a jury to settle. Civ.R. 56 does not provide for a trial court to undertake credibility determinations in resolving motions for summary judgment. While perhaps somewhat self-serving, the testimony of Ohio Edison's employee is no more or less worthy of belief than any other witness for summary judgment purposes. Accordingly, this matter was not properly resolved on summary judgment.
Since we find error in the trial court's decision to grant summary judgment both as to the Coneys' cause of action against Ohio Edison and Edison's derivative action against Time Warner, this Court hereby reverses and remands this matter for further proceedings consistent with law and this Opinion.
Donofrio, J., concurs.
Vukovich, P.J., concurs.