**WILLIAMS et al., Appellants and Cross–Appellees,**

v.

**COOK, Appellee and Cross–Appellant, et al.**

[Cite as *Williams v. Cook* (1999), 132 Ohio App.3d 444.]

Court of Appeals of Ohio,
Third District, Paulding County.

No. 11–98–8.

Decided March 30, 1999.

446

*Marc G. Williams–Young* and *Thomas G. Mackin,* for appellants and cross-appellees.

*Marie Findish,* for appellee and cross-appellant.

Shaw, Judge.

Plaintiffs-appellants, Paula M. Williams and her son Travis J. Hernandez, appeal from the judgment of the Paulding County Court of Common Pleas entered in favor of defendant-appellee, Robert Cook, following a jury trial. Cook has filed a cross-appeal.

This action arose out of a fatal accident that occurred at the Cook farm on August 16, 1995. Travis's father, Juan Hernandez, was employed there and lived in the basement of the Cooks' farmhouse. Travis, who was eight years old, would occasionally visit with his father at the farm. Cook's two grandchildren, Tyler and Adam, would also visit the farm. When Travis was on the farm with Tyler and Adam, the children would play together.

On August 16, 1995, Travis and the Cooks' two grandchildren were playing together at the Cook farm. The children wanted to go inside the house because it was hot. Travis's father allowed them to do so. While the children were playing in the house, Travis accidentally shot Tyler with a rifle taken by Travis from the bathroom closet. Travis told the clinical counselor that Tyler was chasing him with a chain when he ran into the bathroom closet.[1] Travis stated

---

1. None of the children testified at the trial.

that he already knew that the rifle was there because the other boys had shown it to him at another time. When Travis raised the rifle, the other boys told him it was not loaded. Travis then pulled the trigger, and the fatal shot to Tyler's head occurred.

In their complaint against Robert and Jeanette Cook and Cook's Dairy Farm,[2] Travis and his mother raised three claims. In particular, they alleged that Cook was negligent in failing to secure the firearm, in failing to supervise the children while they were social guests, and in entrusting the firearm to Travis.

Cook moved for summary judgment. The trial court overruled Cook's motion, finding that there were genuine issues of material fact as to the relationship of the parties and whether the manner in which the firearm in question was stored violated a duty of care owed to Travis.

This matter proceeded to a jury trial. Following the presentation of the testimony and evidence in this case, the jury returned a verdict in favor of Cook, and the trial court rendered judgment accordingly. This appeal and cross-appeal followed. We will address Cook's sole cross-assignment of error first; in this assignment of error, Cook appeals the denial of his motion for summary judgment. It states as follows:

"The trial court erred by failing to grant appellee/cross-appellant's motion for summary judgment as a matter of law because no genuine issue of material fact existed."

In his cross-assignment of error, Cook argues that he did not owe any duty toward Travis or, at most, he owed Travis the duty to a licensee to refrain from wanton or willful conduct. Additionally, Cook argues that there is nothing in the record to suggest that he breached that duty.

Civ.R. 56(C) provides that before summary judgment may be granted, it must be determined that (1) no genuine issue as to any material fact remains to be litigated, (2) the moving party is entitled to judgment as a matter of law, and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing the evidence most strongly in favor of the nonmoving party, that conclusion is adverse to the party against whom the motion for summary judgment is made.

To establish actionable negligence, a plaintiff must show a duty, a breach of that duty, and an injury proximately resulting therefrom. *Mussivand v. David* (1989), 45 Ohio St.3d 314, 318, 544 N.E.2d 265, 269–270. In cases of

---

**2.** Appellants voluntarily dismissed all claims against Jeanette Cook and Cook's Dairy Farm before the trial. They are not parties to this appeal and all references in the opinion are to Robert Cook, individually.

premises liability, the status of the person who enters upon the land of another defines the scope of the legal duty that the landowner owes the entrant. *Gladon v. Greater Cleveland Regional Transit Auth.* (1996), 75 Ohio St.3d 312, 315, 662 N.E.2d 287, 291. "The philosophy underlying all the decisions with respect to host and guest relationships is that the host extends his hospitality to the guest and that the guest accepts hospitality." *Scheibel v. Lipton* (1951), 156 Ohio St. 308, 330, 46 O.O. 177, 187, 102 N.E.2d 453, 463. There must be evidence of an actual invitation that the host extended to the guest, express or implied. *Starost v. Bradley* (Jan. 29, 1999), Montgomery App. No. 17319, unreported, 1999 WL 41897, citing *Scheibel, supra.* However, if the social guest exceeds the scope of the landowner's invitation, he will lose the status of a social guest and become either a licensee or trespasser. See *Gladon* at 316, 662 N.E.2d 287. Turning now to the duty owed toward a social guest, the Ohio Supreme Court has defined it in *Scheibel, supra,* paragraph three of the syllabus, as follows:

"A host who invites a social guest to his premises owes the guest the duty (1) to exercise ordinary care not to cause injury to his guest by any act of the host or by any activities carried on by the host while the guest is on the premises, and (2) to warn the guest of any condition of the premises which is known to the host and which one of ordinary prudence and foresight in the position of the host should reasonably consider dangerous, if the host has reason to believe that the guest does not know and will not discover such dangerous condition."

Conversely, a licensee is "a person who enters the premises of another by permission or acquiescence, for his own pleasure or benefit, and not by invitation." *Provencher v. Ohio Dept. of Transp.* (1990), 49 Ohio St.3d 265, 266, 551 N.E.2d 1257, 1258. One who enters without invitation or permission purely for his own purposes or convenience is a trespasser. *McKinney v. Hartz & Restle Realtors, Inc.* (1987), 31 Ohio St.3d 244, 246, 31 OBR 449, 450–451, 510 N.E.2d 386, 388. Ordinarily, a landowner owes no duty to a licensee or trespasser except to refrain from willful, wanton, or reckless conduct that is likely to injure him. *Gladon, supra,* 75 Ohio St.3d at 317, 662 N.E.2d at 292–293. Willful conduct implies intent, purpose, or design to injure. *Id.* at 319, 662 N.E.2d at 293–294. Wanton conduct involves the failure to exercise any care whatsoever toward those to whom a duty is owed, occurring under the circumstances in which there is great probability that harm will result. *Id.*

However, when discovering a trespasser or licensee in a position of peril, a landowner is required to exercise ordinary care to avoid injuring him. *Id.* at 318, 662 N.E.2d at 293. Furthermore, as the Ohio Supreme Court has stated, "[w]hether a defendant properly discharged his duty of care is normally a question for the jury." *Commerce & Industry Ins. Co. v. Toledo* (1989), 45 Ohio St.3d 96, 98, 543 N.E.2d 1188, 1192.

■ In the present case, there was no evidence that Cook had extended an express invitation to Travis to stay at the farm when the accidental shooting occurred. However, Cook acknowledged that Travis's presence was allowed on the farm. In fact, Cook considered it to be a favor to Travis's father. On the day of the accident, the children had been playing inside the house when Travis went into the bathroom closet and picked up the rifle.

Cook kept the .22–caliber lever-action rifle that Travis fired in the corner of the bathroom closet behind the built-in drawers. There were clothes hanging in the closet in front of where the rifle was propped up. The two louvered closet doors could not be locked. When Travis visited his father, he had access to the bathroom in the Cook home. Cook testified on deposition that he was unaware until after the accident that the children would have played in the closet or that they would even have seen the rifle.

According to Cook, the bullets or cartridges were ordinarily kept in a separate place from the rifle that Travis fired. Several weeks before the accidental shooting, Travis's father had used that rifle to kill a sick cow for Cook. When Travis's father returned the rifle, Cook assumed it was empty and he then put it away in the bathroom closet. Cook admitted on deposition that he could not remember checking whether the rifle was loaded before replacing it. Cook also admitted that it would have taken only a few seconds of time for him to do so.

After construing these facts most favorably to appellants, we find that the determination of Travis's status on the property the day of the accident was a genuine issue of material fact for the jury. Reasonable minds could find that an implied invitation from Cook to Travis existed in these circumstances. Even so, reasonable minds could yet find that Travis exceeded the scope of his invitation and became either a licensee or trespasser. In addition, a genuine issue of material fact existed as to whether Cook breached the corresponding duty of care owed to Travis. Accordingly, summary judgment was inappropriate based upon the facts presented. Cook's sole cross-assignment of error is therefore overruled.

We will now address appellants' assignments of error. They state as follows:

"The trial court erred as a matter of law by failing to determine Travis's status on Cook's property on August 16, 1995.

"The trial court erred in instructing the jury that it could find Travis was a trespasser on Cook's property on August 16, 1995.

"The trial court should have instructed the jury that Cook owed Travis a heightened duty of care since Travis was entitled to care proportionate to his inability to foresee and avoid perils he would encounter and since Cook created an inherently dangerous condition on the property that was readily accessible to Travis.

"The trial court erred in barring appellants from introducing the expert testimony of Herbert C. Chambers III."

We first determine appellants' fourth assignment of error, that the trial court erred in excluding the testimony of appellants' expert in gun safety, Herbert C. Chambers III. The trial court did not permit this expert to testify with respect to whether Cook breached the standard of care in failing to properly store and secure the rifle involved in the accident.

Evid.R. 702 governs the admission of expert testimony and provides:

"A witness may testify as an expert if all of the following apply:

"(A) The witness' testimony either relates to matters beyond the knowledge or experience possessed by lay persons or dispels a misconception common among lay persons;

"(B) The witness is qualified as an expert by specialized knowledge, skill, experience, training, or education regarding the subject matter of the testimony;

"(C) The witness' testimony is based on reliable scientific, technical, or other specialized information."

The Ohio Supreme Court has held that "matters of common knowledge and experience, subjects which are within the ordinary, common and general knowledge and experience of mankind, need not be established by expert opinion testimony." *Ramage v. Cent. Ohio Emergency Serv., Inc.* (1992), 64 Ohio St.3d 97, 103, 592 N.E.2d 828, 833.

We find that the jurors could reasonably examine on the basis of their common knowledge and experience whether Cook failed to properly store the rifle or whether he acted in a negligent manner in failing to secure the rifle. Thus, the trial court did not err in refusing to permit appellants' expert to testify. Appellants' fourth assignment of error is overruled.

In their remaining assignments of error, appellants assert three errors made by the trial court in its instructions to the jury. First, appellants contend that the trial court erred by failing to instruct the jury as a matter of law that Travis was a social guest.

When sufficient evidence exists relating to an issue to permit reasonable minds to differ, a trial court has the duty to submit that issue to the jury. *Renfro v. Black* (1990), 52 Ohio St.3d 27, 30, 556 N.E.2d 150, 152–153. Also, as the Ohio Supreme Court aptly stated in *Pennsylvania RR. Co. v. Vitti* (1924), 111 Ohio St. 670, 146 N.E. 94, paragraph one of the syllabus:

"Where the evidence is such as to warrant, it is the duty of the trial court to submit to the jury with proper instructions the question whether the person

injured on the premises of another by the claimed negligence of the owner thereof was at the time of such injury on the premises either at the express or implied invitation of the defendant, or whether he was a trespasser or a mere licensee."

The evidence supports the trial court's refusal to assign Travis the legal status of a social guest as a matter of law. Reasonable minds could find that Travis exceeded the scope of his invitation and lost his status as a social guest. Travis's status was an issue of fact for the jury to determine.

 The second claim of appellants is that the trial court erred by instructing the jury that it could find that Travis was a trespasser on the Cooks' property. It is well established that a trial court should confine its instructions to the jury to the issues raised by the pleadings and the evidence. *Becker v. Lake Cty. Mem. Hosp. W.* (1990), 53 Ohio St.3d 202, 208, 560 N.E.2d 165, 170. In determining whether a portion of a jury charge is harmless or prejudicial, this court must look at the jury charge as a whole. *Id.* "[A] reviewing court must determine whether the jury charge probably misled the jury in a matter materially affecting the complaining party's substantial rights." *Id.*

In the present case, Travis clearly was not a trespasser at entry. Even so, Travis could yet be found to have become a trespasser once on the Cook property by exceeding the scope of his invitation. The trial court instructed the jury that it must determine the legal relationship between the parties in order to decide the duty of care that Cook owed to Travis. The instruction as given is as follows:

"To decide the duty owed to Travis Hernandez, you must decide whether he was a social guest, a licensee, or a trespasser.

"A social guest is a person who enters and remains on the premises of the owner by express or implied invitation to enjoy hospitality as a guest of the owner.

"A licensee is a person who enters and remains on the premises of another for his own pleasure, convenience, or benefit, and with the permission or acquiescence, either express or implied, of the owner.

"A trespasser is a person who enters and remains on the premises of another without permission, either express or implied, and without consent or invitation for a purpose or convenience of his own, or for no apparent purpose.

"The status of an individual upon the premises of another may change while he remains on the premises. If a social guest goes beyond the limits of the area of his invitation, he may become a licensee or a trespasser, depending upon whether he goes there with or without the consent of the defendant."

Considering the instruction on change of status, as well as the court's instruction in totality, we find that the court's instructions did not mislead the jury in a matter materially affecting appellants' rights.

 Last, appellants contend that the trial court erred in failing to give two of their proposed jury instructions. Appellants cite the Restatement of the Law 2d, Torts (1965) 222, Section 343B, as support for their proposed instructions that impose a greater duty of care upon the landowner in the case of a child regardless of his status. The section cited is concerned chiefly with the special rule of possessor liability for harm based on the attractive-nuisance doctrine.[3] See Comment *a*. In the instant case, however, the doctrine would not appear to apply to the facts presented. There is no evidence that Cook knew about the children playing in the closet or discovering the rifle until after the accident. In any event, Ohio does not recognize the doctrine. See *Elliott v. Nagy* (1986), 22 Ohio St.3d 58, 22 OBR 77, 488 N.E.2d 853. Thus, the trial court did not err in failing to so instruct the jury in this case.

 The second proposed jury instructions involved a heightened duty of care where the landowner maintains a dangerous instrument on the property. Appellants' proposed instructions stated as follows:

"In determining whether defendant used reasonable care in this case, you should consider that with respect to children, the owner of property has an increased duty of care in special circumstances, including the situation when the owner maintains a 'dangerous instrumentality' on the property. [*Elliott v. Nagy* (Dec. 21, 1984), Sandusky App. No. S–84–23, 1984 WL 3706 (citing *Wheeling & Lake Erie RR. Co. v. Harvey* (1907), 77 Ohio St. 235, 83 N.E. 66).] A 'dangerous instrumentality' is a machine or condition which by its very nature is calculated to do injury. [*Centrello v. Basky* (1955), 164 Ohio St. 41, 57 O.O. 77, 128 N.E.2d 80.] Ohio law considers a loaded firearm to be a 'dangerous instrumentality,' requiring

---

3. The doctrine of attractive nuisance set forth in 2 Restatement of the Law 2d, Torts (1965) 197, Section 339, states as follows:

"A possessor of land is subject to liability for physical harm to children trespassing thereon caused by an artificial condition upon the land if

"(a) the place where the condition exists is one upon which the possessor knows or has reason to know that children are likely to trespass, and

"(b) the condition is one of which the possessor knows or has reason to know and which he realizes or should realize will involve an unreasonable risk of death or serious bodily harm to such children, and

"(c) the children because of their youth do not discover the condition or realize the risk involved in intermeddling with it or in coming within the area made dangerous by it, and

"(d) the utility to the possessor of maintaining the condition and the burden of eliminating the danger are slight as compared with the risk to children involved, and

"(e) the possessor fails to exercise reasonable care to eliminate the danger or otherwise to protect the children."

the use of utmost caution. [*State v. Widner* (1982), 69 Ohio St.2d 267, 23 O.O.3d 265, 431 N.E.2d 1025; *Schnabel v. Whipkey* (Nov. 19, 1990), Stark App. No. CA–8096, unreported, 1990 WL 187093]."

Appellants cited *Elliott v. Nagy* (Dec. 21, 1984), Sandusky App. No. S–84–23, unreported, 1984 WL 3706, affirmed (1986), 22 Ohio St.3d 58, 22 OBR 77, 488 N.E.2d 853, in support of the requested jury instruction on the greater duty of a landowner. As stated in that case, the Ohio Supreme Court has imposed on a landowner an increased duty of care with respect to children in special circumstances, including where the owner maintains a dangerous instrument. *Centrello v. Basky* (1955), 164 Ohio St. 41, 57 O.O. 77, 128 N.E.2d 80, dealt with a minor injured by a concrete mixer allegedly placed on a public sidewalk adjacent to a house under construction. More recent Ohio cases have recognized a public-place exception to the rule that a landowner owes no duty to undiscovered trespassers other than to refrain from injuring such trespassers by willful or wanton conduct. That exception does not apply unless a landowner maintains a dangerous instrument on or immediately adjacent to a public place where the instrument of harm is not readily apparent to children and where it is within easy reach or is susceptible to contact by inadvertent conduct. *Carswell v. Toledo Edison Co.* (1988), 53 Ohio App.3d 82, 85, 557 N.E.2d 1241, 1244–1245, citing *McKinney v. Hartz & Restle Realtors, Inc.*, 31 Ohio St.3d at 247–248, 31 OBR at 451–453, 510 N.E.2d at 389–390; see, also, *Phillips v. Dayton Power & Light Co.* (1994), 93 Ohio App.3d 111, 637 N.E.2d 963; *Chaplynski v. Van Holle* (Apr. 13, 1992), Clermont App. No. CA91–08–060, unreported, 1992 WL 75188.

Appellants have also cited *Schnabel v. Whipkey* (Nov. 19, 1990), Stark App. No. CA–8096, unreported, 1990 WL 187093. In *Schnabel,* the appellate court addressed jury instructions on the standard of care where the instruction included reference to a dangerous instrument. Therein, the appellate court stated that the trial court had instructed the jury on ordinary care as the standard to be applied in the case. The court found that the trial court's reference to a firearm as a "dangerous instrumentality" and statement that "utmost caution" is required around a loaded gun did not taint its instructions on the standard of care. The court cited *Thompson v. Ohio Fuel Gas Co.* (1967), 9 Ohio St.2d 116, 119, 38 O.O.2d 294, 296–297, 224 N.E.2d 131, 135, and we find that the law stated in that Ohio Supreme Court decision is instructive. It states as follows:

"In determining in any given case whether a defendant exercised that care which an ordinarily and reasonably prudent man would have exercised under the same or similar circumstances, one of the most important of the circumstances is 'the potential danger apparently involved.'" *Id.*, quoting *Schwer v. New York, Chicago & St. Louis RR. Co.* (1954), 161 Ohio St. 15, 21, 117 N.E.2d 696, 700, 701.

The amount of care required to discharge a duty to a child of tender years is greater than is necessary to discharge a duty to an adult exposed to the same danger. *Di Gildo v. Caponi* (1969), 18 Ohio St.2d 125, 47 O.O.2d 282, 247 N.E.2d 732, paragraph one of the syllabus.

In the present case, the trial court instructed the jury as follows:

"Ordinary care is the care that a reasonably cautious, careful, or prudent person would use under the same or similar circumstances.

"The amount of care increases in proportion to the danger that reasonably should be foreseen. Ordinary care is a relative term dependent upon all of the surrounding circumstances including the presence of a dangerous instrumentality upon the premises, such as a firearm. The test, though, is still ordinary care under the circumstances.

"The amount of care required to discharge a duty owing to a child exposed to danger is necessarily greater than that required to discharge a duty to an adult exposed to the same danger. Children are entitled to a degree of care in proportion to their inability to foresee and avoid the perils that they may enter."

Based on the foregoing statement of the law, we do not agree with the appellants that the trial court's instruction to the jury regarding the duty of care was erroneous and that it erred in failing to give appellants' proposed instructions in this case.

Accordingly, appellants' first, second, and third assignments of error are overruled.

In sum, we find that the trial court properly overruled Cook's motion for summary judgment. The judgment of the trial court based on the jury verdict in favor of Cook is affirmed.

*Judgment affirmed.*

THOMAS F. BRYANT, P.J., and HADLEY, J., concur.