[Cite as *Riley v. Alston*, 2013-Ohio-5769.]

STATE OF OHIO, MAHONING COUNTY

IN THE COURT OF APPEALS

SEVENTH DISTRICT

IRMA RILEY,                               )
                                          )
        PLAINTIFF-APPELLANT,              )
                                          )        CASE NO. 12 MA 42
V.                                        )
                                          )        OPINION
DAVID ALSTON, et al.,                     )
                                          )
        DEFENDANTS-APPELLEES.             )


CHARACTER OF PROCEEDINGS:        Civil Appeal from Court of Common
                                 Pleas of Mahoning County, Ohio
                                 Case No. 09CV2836

JUDGMENT:                        Affirmed

APPEARANCES:
For Plaintiff-Appellant          Attorney Matthew T. Fekete
                                 725 Boardman-Canfield Rd., Unit L-1
                                 Youngstown, Ohio 44512

For Defendants-Appellees         Attorney Margo S. Meola
                                 100 Federal Plaza East, Suite 926
                                 Youngstown, Ohio 44503-1811


JUDGES:

Hon. Gene Donofrio
Hon. Joseph J. Vukovich
Hon. Cheryl L. Waite


                                 Dated: December 30, 2013

DONOFRIO, J.

{¶1} Plaintiff-appellant, Irma Riley, appeals from a Mahoning County Common Pleas Court judgment granting summary judgment to defendants-appellees, David and Cora Alston, on Riley's negligence claim.

{¶2} On Thanksgiving Day in 2008, Riley went to the Alstons' house after speaking to Cora Alston and learning that she was making sweet potato pie. Riley had been friends with the Alstons for many years and, according to Cora, Riley was always welcome at their house. Riley arrived around 2:00 p.m. She went up the Alstons' front steps onto their porch and went into the house through their front door. Riley stayed and visited with the Alstons for approximately 20 minutes. When Riley was ready to leave, Cora walked with her to the front porch. As Riley attempted to step down the porch steps, she fell down the steps to the pavement. Her fall resulted in injuries to her elbow and shoulder. Riley asserted that one of the floorboards was weak and caught her shoe causing her to lose her balance.

{¶3} Riley filed a complaint against the Alstons alleging they negligently failed to construct and/or maintain their porch and she was injured as a result of their negligence.

{¶4} The Alstons filed a motion for summary judgment asserting there were no genuine issues of material fact, Riley was a social guest at their home, there was no actionable defect on the premises, and any condition on the steps was open and obvious. In support of their motion, the Alstons relied on Riley's and Cora's depositions. Riley filed an opposing memorandum. She relied on her affidavit as well as the affidavits and expert witness reports of architect Richard Zimmerman.

{¶5} The trial court granted the Alstons' motion for summary judgment. It found Riley was a social guest at appellees' home. The court found Zimmerman's report did not have any bearing on the ultimate issues in this case. It found Riley's admission that the floorboard, when pressed down, "did not go down very much" established that the defect was not one which the Alstons should have considered to be dangerous or a condition which the Alstons should have had reason to believe Riley would not know about or discover herself. At best, the court concluded, the defect was a minor or trivial imperfection on the property. Additionally, the court

found that there was no liability because Riley was deemed to have knowledge of the condition of the steps since she traversed this "hazard" upon entering the house. The court found Riley could not claim she did not notice the depression in the floorboard when she entered the house, yet it became a material, dangerous condition upon her exit. Thus, the court concluded there was no duty of care owed to Riley by the Alstons.

{¶6} Riley filed a timely notice of appeal on March 2, 2012. She now raises a single assignment of error that states:

THE TRIAL COURT ERRED, AS A MATTER OF LAW, IN GRANTING SUMMARY JUDGMENT AGAINST RILEY ON HER CLAIM FOR SOCIAL HOST NEGLIGENCE WHERE THE RECORD EVIDENCE RAISES NUMEROUS GENUINE ISSUES OF MATERIAL FACT UPON WHICH REASONABLE MINDS CAN REACH DIFFERENT CONCLUSIONS, BOTH AS TO THE ISSUE OF NEGLIGENCE AND AS TO THE ISSUE OF PROXIMATE CAUSE.

{¶7} Riley contends summary judgment was not proper because numerous questions of material fact exist to preclude summary judgment. She raises numerous arguments in support of her position.

{¶8} First, Riley argues Zimmerman's affidavits and reports established there were seven separate residential building code violations existing with the Alstons' stairs and porch including loose floorboards on the front edge of the porch, a broken support joist for the stairs; uneven and faulty risers, a substantial gap between the landing and the stairs, and a faulty handrail. She points out that Zimmerman also concluded that the condition of the stairs, floor boards, and handrail were the proximate and foreseeable causes of her fall. And she notes that Zimmerman concluded these conditions likely existed for a year and the Alstons must have known about them. She argues that because the residential building code requirements were adopted by the City of Youngstown as part of the Municipal Code

of Ordinances, a violation of the requirements is evidence of negligence.

{¶9} Second, Riley asserts the record contains evidence from which we can infer the Alstons had knowledge of at least some of the defects. She points to Cora's statement that the gap between the front porch decking and the edge of the top step had always been there.

{¶10} Third, Riley argues the evidence demonstrated she was not aware of the defects nor would she be likely to discover them herself because many of the defects were hidden or latent. Specifically, she points to the severed support joist that created a "springboard effect." She asserts the Alstons would have notice of it from everyday use, but she would not because the "springboard effect" did not happen every time someone stepped on the floorboard.

{¶11} Fourth, Riley notes it is uncontroverted that the Alstons failed to warn her of any defects.

{¶12} Fifth, Riley contends the trial court erred in making credibility determinations and finding that the defective conditions were open and obvious when there was evidence that there were many hidden defects.

{¶13} Sixth, Riley argues the trial court erred in disregarding Zimmerman's findings and opinions and instead finding the defects to be "minor or trivial."

{¶14} Seventh, Riley asserts that whether the Alstons' negligence was the proximate cause of her fall and injury is a question for a jury.

{¶15} In reviewing a trial court's decision on a summary judgment motion, appellate courts apply a de novo standard of review. *Cole v. Am. Industries & Resources Corp.*, 128 Ohio App.3d 546, 552, 715 N.E.2d 1179 (7th Dist.1998). Thus, we shall apply the same test as the trial court in determining whether summary judgment was proper. Civ.R. 56(C) provides that the trial court shall render summary judgment if no genuine issue of material fact exists and when construing the evidence most strongly in favor of the nonmoving party, reasonable minds can only conclude that the moving party is entitled to judgment as a matter of law. *State ex rel. Parsons v. Flemming*, 68 Ohio St.3d 509, 511, 628 N.E.2d 1377 (1994). A

"material fact" depends on the substantive law of the claim being litigated. *Hoyt, Inc. v. Gordon & Assoc., Inc.*, 104 Ohio App.3d 598, 603, 662 N.E.2d 1088 (8th Dist.1995), citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

{¶16} A negligence claim requires the plaintiff to prove: (1) duty; (2) breach of duty; (3) causation; and (4) damages. *Anderson v. St. Francis-St. George Hosp., Inc.*, 77 Ohio St.3d 82, 84, 671 N.E.2d 225 (1996).

{¶17} The issue in this case surrounds the duty owed to Riley by the Alstons and whether they breached that duty.

{¶18} There is no dispute that Riley was a social guest at the Alstons' house. A social guest is a person who enters the land of another under an actual invitation, either express or implied, extended by the host. *Williams v. Cook*, 132 Ohio App.3d 444, 450, 725 N.E.2d 339 (3d Dist.1999). The landowner owes the social guest a duty to warn the guest of any condition of the premises, which is known to the host and which one of ordinary prudence and foresight in the position of the host should reasonably consider dangerous, if the host has reason to believe that the guest does not know and will not discover such dangerous condition. *Scheibel v. Lipton*, 156 Ohio St. 308, 329, 102 N.E.2d 453 (1951), paragraph three of the syllabus. But "[a] host is not an insurer of the safety of a guest while upon the premises of the host and there is no implied warranty on the part of a host that the premises to which a guest is invited by him are in safe condition." *Id.* at paragraph two of the syllabus.

{¶19} We must consider the depositions and affidavits submitted in order to determine if a genuine issue of material fact exists as to whether the Alstons breached their duty to Riley.

{¶20} Riley stated that she had no problem going up the steps and onto the Alstons' porch on the day in question. (Riley Dep. 33). When she left, Riley took the same path as she did when she arrived at the Alstons' house. (Riley Dep. 39). She stated that as she left, she stepped on a board that was weak or loose and caught her shoe. (Riley Dep. 36, 38). By "weak board," Riley stated that she meant that the

board "went down" when she pressed on it. (Riley Dep. 38). She stated that the floorboard went down with her weight and sprang back up. (Riley Dep. 57). When asked how far the floorboard pressed down when she stepped on it, Riley answered, "Not very much." (Riley Dep. 58). She stated it was just enough to cause her to lose her balance. (Riley Dep. 58).

{¶21} Cora estimated that Riley had been to her house nine or ten times. (Cora Dep. 11). Riley estimated she had been to the Alstons' house six or seven times. (Riley Dep. 29). Every time she had visited, Riley went into the house the same way she did on the day she fell. (Riley Dep. 29, 32). Riley never noticed the weak spot on the porch before. (Riley Dep. 57).

{¶22} Additionally, Cora stated that no boards were loose on her porch. (Cora Dep. 17). She stated that she never had any type of problem with the front porch or steps. (Cora Dep. 17-18). The Alstons had the wooden stairs installed approximately six years prior to Riley's fall. (Cora Dep. 20). No one had ever slipped, tripped, or fallen while walking up or down the front porch steps before. (Cora Dep. 18). Nor had anyone ever complained of losing their balance when walking on the steps before. (Cora Dep. 18).

{¶23} Cora also examined some photographs of her porch and steps. She stated that the gap between the porch decking and the edge of the top stair had always been there. (Cora Dep. 21). The photographs depict the gap between the top of the top step and the porch decking. (Exs. A, B, C). The gap is clearly visible to anyone walking up the front steps. Cora stated that when stepping on the edge of the decking where the gap is, the boards do not move. (Cora Dep. 22).

{¶24} Riley also submitted the affidavits and reports of architect Richard Zimmerman.

{¶25} In his initial report, Zimmerman stated that he reviewed the details of the accident, visited and photographed the steps, and reviewed the applicable codes and other standards. Zimmerman stated that he conducted his inspection of the steps on March 31, 2011, almost two and half years after the incident. He cited several

provisions of the Ohio Residential Code, adopted by the City of Youngstown, dealing with riser height, tread depth, stairway walking surface, handrail height, handrail continuity, and handrail grip size. Zimmerman then concluded that the Alstons' steps violated these provisions in various ways.

**{¶26}** Zimmerman went on to opine that the porch floor, at its meeting with the steps, was not stable or structurally sound. He found that for a substantial portion of the step width, the porch floorboards were inadequately supported creating a "springboard" effect. Zimmerman opined that the flex was sufficient to cause imbalance in the average, unsuspecting person.

**{¶27}** Zimmerman went on to opine that, on the day of the fall, Riley was traversing the weakest, inadequately supported area of the porch floorboards, attempting to navigate a too-high riser, while reaching for a handrail that was too low. He concluded that the conditions of the porch floorboards, steps, and handrail were the proximate and foreseeable cause of Riley's fall and injury. Zimmerman stated that the conditions were not open and obvious to Riley because she could not be expected to recognize the "dimensional insufficiencies of the stair components" or the "structural deficiencies of the porch flooring and supports."

**{¶28}** Zimmerman believed that the physical condition of the porch and steps had been present "for some time." He believed the Alstons must have been aware of the specific conditions of the porch floor and steps. Zimmerman opined that the physical condition of the steps violated the Ohio Residential Code and contributed to Riley's injury and there was apparent negligence on the Alstons' part that also contributed to Riley's injury.

**{¶29}** In his supplemental report, Zimmerman added that a floor joist beneath the leading edge of the porch floorboards was completely severed. And he stated that a number of the floorboards had split, rotted, and deteriorated ends. Zimmerman opined that these defects, along with those cited in his initial report, represented "a latent and unreasonable danger." Zimmerman went on to state that none of the defects were open and obvious, even to a person exercising due caution by looking

where they were walking.

**{¶30}** It is important to note several things regarding the evidence here.

**{¶31}** First, Riley stated that the only cause of her fall was a weak or loose board that "went down" when she pressed on it, on which she caught her shoe. As to how far the floorboard went down, Riley stated "not very much." Thus, Zimmerman's opinions that improper riser height, tread depth, stairway walking surface, handrail height, handrail continuity, and handrail grip size contributed to Riley's fall are not relevant. Zimmerman was not there when Riley fell.

**{¶32}** Second, Zimmerman did not examine the Alstons' steps until two years and four months after Riley's fall. Thus, there is no way to tell if things like a severed floor joist and split or rotted ends on the floorboards were present at the time of Riley's fall. Zimmerman stated that these conditions were present "for some time" but he did not define how long "some time" was nor did he explain what led him to that conclusion.

**{¶33}** Third, Zimmerman stated that the defects he noted in his report were latent defects and were not open and obvious. And Cora stated that she had never had any problems with the front porch steps, no one had ever slipped, tripped, or fallen while walking up or down the front porch steps, and no one had ever complained of losing their balance. Therefore, there is no evidence that the Alstons had any knowledge that their steps may have presented "an unreasonable danger" as any defects were latent.

**{¶34}** The only condition that Cora stated the Alstons were aware of was the gap between the top of the top step and the floorboards of the porch. However, as can be seen from the photographs, this gap was open and obvious to anyone walking up the front steps. And Riley had walked up the Alstons' front steps numerous times, including the day she fell. A property owner owes no duty to warn those lawfully on the premises of open and obvious dangers. *Armstrong v. Best Buy Co. Inc.*, 99 Ohio St.3d 79, 2003-Ohio-2573, 788 N.E.2d 1088, at the syllabus.

**{¶35}** The Alstons owed a duty to warn Riley, their social guest, of any

condition on their property that they knew about and should reasonably have considered dangerous. Yet they had no duty to warn her of "dangers" of which they were unaware. It has been stated that

> [t]he guest is legally nothing more than a licensee, to whom the possessor owes no duty of inspection and affirmative care to make the premises safe for his visit. ... The reason usually given is that the guest understands when he comes that he is placed on the same footing as one of the family, and must take the premises as the occupier himself uses them, without any inspection or preparation for his safety; and that he also understands that he must take his chances as to any defective condition unknown to the occupier, and is entitled at most to a warning of dangers that are known.

*Hawthorne v. Moore*, 2d Dist. No. CA 1762, 1983 WL 4841 (March 4, 1983), quoting Prosser Torts 4th Ed.

{¶36} Based on the above, summary judgment was proper in this case. There is not any evidence that the Alstons were aware of a danger and failed to warn Riley. Moreover, the gap between the top step and the porch floorboard was open and obvious to anyone who had walked up the steps. Accordingly, Riley's sole assignment of error is without merit.

{¶37} For the reasons stated above, the trial court's judgment is hereby affirmed.

Vukovich, J., concurs.

Waite, J., concurs.