[Cite as *Saliba v. Miley*, 2021-Ohio-3638.]

# IN THE COURT OF APPEALS OF OHIO

## SEVENTH APPELLATE DISTRICT
## NOBLE COUNTY

KEVIN SALIBA et al.,

Plaintiffs-Appellants,

v.

MICHAEL MILEY et al.,

Defendants-Appellees.

---

**OPINION AND JUDGMENT ENTRY**
**Case No. 21 NO 0481**

---

Civil Appeal from the
Court of Common Pleas of Noble County, Ohio
Case No. CVC 219-0078

**BEFORE:**
Carol Ann Robb, Gene Donofrio, David A. D'Apolito, Judges.

---

**JUDGMENT:**
Affirmed.

---

*Atty. Miles D. Fries*, GOTTLIEB, JOHNSTON, BEAM & DAL PONTE, P.L.L., 320 Main Street, P.O. Box 190, Zanesville, Ohio 43702-0190 for Plaintiffs-Appellants and

*Atty. Kaitlin L. Madigan*, *Atty. Steven G. Carlino,* WESTON HURD, LLP, 10 West Broad Street, Ste. 2400, Columbus, OH 43215 for Defendants-Appellees.

.

Dated:  September 30, 2021

_____

**Robb, J.**

**{¶1}**   Plaintiffs-Appellants Kevin and Heather Saliba appeal the decision of the Noble County Common Pleas Court granting summary judgment for Defendants-Appellees Michael and Courtney Miley.  Appellants raise two assignments of error in this appeal. The first is whether the trial court erred when it determined Kevin Saliba was a social guest, not an invitee when he went onto Appellee's land for purposes of premises liability. The second issue is whether there is a genuine issue of material fact as to Appellee's actual or constructive notice of the hazardous condition in the cistern.  For the reasons expressed below, the trial court's decision is affirmed; Kevin was a social guest and there was no evidence Appellees knew of the toxic condition of the cistern.

Statement of Facts

**{¶2}**   Appellees own the property located at 51545 Shenandoah Road in Pleasant City, Ohio in Noble County.  Michael bought the house prior to their marriage and a house was located on the property (old house).  A cistern provided water to the old house.  In 2016, they began building a new house and utilized the same cistern to provide water to the new house. After the new house was complete, it is alleged the old house was torn down and buried in the basement of the old house.  This was next to the water cistern. The same water cistern serviced the new house.

**{¶3}**   In July 2017 Appellees noticed issues with the water to the house; it was cloudy and had an odor described as smelling like pond water.  Appellees drained the cistern and cleaned it removing soot, sediment, and leaves.  They were in the cistern for five hours that time and they did not become sick.  While in the cistern they did not smell anything toxic.  Two or three months later, Appellees once again noticed the water was cloudy and had that pond odor.  On October 4, 2017 they emptied the cistern. They did not notice any odors coming from the cistern, but they did notice a small hole or crack on the wall opposite where the old house was buried.  Michael was in the cistern around 4:30 p.m. on October 4 after it was drained to inspect it; there was no incident when he was in the cistern.   It was then that he noticed the hole or crack.

{¶4}   Appellees then went to Courtney's sister house at around 5:00 p.m. and did not return until about 9:00 p.m.  At that time Michael knew Kevin was going to stop by the house.  According to Appellees, Kevin was dropping off a pipe for Michael to weld.  According to Appellants, Kevin was stopping by to fix an electrical issue and to drop off a pipe.  Kevin was an electrician and Michael was a welder.  They were friends and did favors for each other and often spent time together socially.

{¶5}   When Kevin arrived, Michael was already in the cistern.  Courtney was getting a broom for Michael and informed Kevin that Michael was in the cistern; she did not see Kevin enter the cistern.  When Courtney came back with the broom, she saw Michael passed out in the cistern.  She called 911.  Both Michael and Kevin were rescued from the cistern.  While in the cistern, they were exposed to hydrogen sulfide and both suffered extensive injuries.

{¶6}   Michael suffered total organ shutdown within 48 hours and heart failure.  While he recovered, he lives with a left ventricular assist device and is currently on a heart transplant list.  Kevin suffered a toxic and anoxic brain injury.  The toxic injury was from the chemicals he was exposed to and the anoxic injury was due to the lack of oxygen.  He is disabled in several areas; he is not able to speak well, has hearing loss, balance issues, vision loss, and spasticity of the arms.

{¶7}   As a result of the injuries, Appellants filed suit against Appellees based on premises liability.  9/26/19 Complaint.  In the complaint, Appellants asserted Kevin went over to the house to assist and thus, was an invitee.  They also claimed Appellees were aware of the hazardous fumes and failed to advise.  9/26/19 Complaint.

{¶8}   Appellees answered the complaint and following discovery filed a motion for summary judgment.  10/21/19 Answer; 2/27/20 Motion for Summary Judgment.  In the motion for summary judgment, they asserted Kevin was a social guest, they owed him a duty to inform him of dangerous conditions of which they knew or had constructive knowledge.  2/27/20 Summary Judgment Motion.  They submitted the evidence indicated they did not know of the condition.  2/27/20 Summary Judgment Motion.  Attached to the summary judgment motion were affidavits from Courtney Miley and Michael Miley.  In Courtney's affidavit she averred there was no odor of chemicals when they were in the cistern earlier in the day on October 4, 2017 and there was no odor of chemicals when they were in the cistern in July 2017.  Affidavit Courtney Miley.  In his affidavit, Michael

indicated he has no recollection of Kevin entering the cistern and he does not recall the smell of gas in the cistern at any time on October 4, 2017. Affidavit Michael Miley. He also indicated on October 4, 2017 he noticed a crack in the wall opposite where the basement was buried and water was leaking in the cistern through that crack/hole. Affidavit Michael Miley; Michael Miley Depo.

**{¶9}** Appellants filed a motion in opposition to summary judgment asserting Kevin was an invitee, not a social guest and Appellees should have reasonably anticipated the toxic fumes because despite warnings, they buried the old house in the basement of the old house next to the cistern. 9/9/20 Motion in Opposition to Summary Judgment. This created a landfill scenario and the toxic fumes from the decomposing debris of the old house leached into the cistern. 9/9/20 Motion in Opposition to Summary Judgment. Appellants also asserted Appellees had actual knowledge of the fumes. 9/9/20 Motion in Opposition to Summary Judgment. In support of their arguments, they attached to the motion an affidavit from Heather's father, Donald DeVolld, a self-employed contractor. He asserted he advised Appellees to not bury the old house, but they did not listen to him. He also indicated he was at the new house on several occasions prior to October 2017 and he smelled the water and it smelled like raw sewage. Affidavit Donald DeVolld. This was the problem he had warned Michael would incur from burying the old house. Affidavit Donald DeVolld. He stated the smell Appellees described as pond water was the odor of raw sewage. Affidavit Donald DeVolld.

**{¶10}** Appellees filed a reply in support of summary judgment and a motion to strike DeVolld's affidavit. 9/15/20 Motion. They asserted the deposition testimony established Kevin was not an invitee, but rather a social guest and they did not have knowledge of the hazardous condition. They also moved to have the DeVolld affidavit struck because he was not qualified to offer expert opinion. 9/15/20 Motion.

**{¶11}** Appellants filed a motion contra to the motion to strike DeVolld's affidavit asserting he was offering his lay opinion. 10/8/20 Plaintiff Memo Contra to the Motion to Strike. In response, Appellees filed a reply in support of the motion to strike. 10/14/20 Reply in Support of Motion to Strike.

**{¶12}** The trial court granted summary judgment for Appellees noting that it was a tragic accident and no one was to blame. 2/22/21 J.E.; 3/1/21 J.E. The trial court did not

rule on the motion to strike DeVolld's affidavit, but the judgment granting summary judgment did not refer to the affidavit. 3/1/21 J.E.

{¶13} Appellants timely appealed the trial court's decision raising two assignments of error. 3/23/21 Notice of Appeal.

## Standard of Review

{¶14} We review a trial court's summary judgment decision de novo, applying the same standard that the trial court applies under Civ.R. 56(C). *Grafton v. Ohio Edison Co.*, 77 Ohio St.3d 102, 105, 671 N.E.2d 241 (1996). Under Civ.R. 56(C), summary judgment is appropriate when (1) there is no genuine issue of material fact, (2) the moving party is entitled to judgment as a matter of law, and (3) after construing the evidence most favorably for the party against whom the motion is made, reasonable minds can reach only a conclusion that is adverse to the nonmoving party. Civ.R. 56(C).

{¶15} On a motion for summary judgment, the moving party carries an initial burden of identifying specific facts in the record that demonstrate entitlement to summary judgment. *Dresher v. Burt*, 75 Ohio St.3d 280, 292-293, 662 N.E.2d 264 (1996). If the moving party fails to meet this burden, summary judgment is not appropriate; if the moving party meets this burden, the nonmoving party must then point to evidence of specific facts in the record demonstrating the existence of a genuine issue of material fact for trial. *Id.* at 293. If the nonmoving party fails to meet this burden, summary judgment is appropriate. *Id.*

{¶16} With that standard in mind, we turn to the assignments of error. The assignments of error will be addressed out of order because to determine what type of notice is required under premises liability we must first determine the status of the injured party. The second assignment of error addresses the issue of whether Kevin is an invitee or a social guest.

## Injured Party's Status
## Second Assignment of Error

"The trial court erred in finding that Kevin Saliba was a social guest."

{¶17} Appellants' negligence cause of action is based on premises liability. Ohio's general premises liability law adheres to the common law classifications of invitee,

licensee, and trespasser. *Gladon v. Greater Cleveland Regional Transit Auth.,* 75 Ohio St.3d 312, 315, 662 N.E.2d 287 (1996), citing *Shump v. First Continental–Robinwood Assoc.,* 71 Ohio St.3d 414, 417, 644 N.E.2d 291 (1994). The Ohio Supreme Court has stated that "[i]t is axiomatic that, under the common law of premises liability, the status of the person who enters upon the land of another (i.e., trespasser, licensee, or invitee) defines the scope of the legal duty that the responsible party owes the entrant." *Shump,* 71 Ohio St.3d at 417. The Ohio Supreme Court also has recognized social guests as a distinct category. *Rutkai v. Freeland*, 9th Dist. Summit No. 24267, 2008-Ohio-6440, ¶ 20, citing *Scheibel v. Lipton,* 156 Ohio St. 308, 328, 102 N.E.2d 453 (1951).

**{¶18}** The issue in this case is whether Kevin was an invitee or a social guest. Appellants contend there is a genuine issue of material fact as to whether Kevin was a social guest or invitee. Appellees assert the facts demonstrate Kevin was a social guest and there is no genuine issue of material fact.

**{¶19}** "Invitees are persons who rightfully come upon the premises of another by invitation, express or implied, for some purpose which is beneficial to the owner." *Gladon*, 75 Ohio St.3d at 315; *Scheibel,* 156 Ohio St. at paragraph one of the syllabus. An invitee is a person who enters the land of another by invitation, the invitee's entrance is connected with the owner's business or with an activity the owner conducts or permits to be conducted on his land, and there is a mutuality of benefit or benefit to the owner. *Ard v. Fawley,* 135 Ohio App.3d 566, 571, 735 N.E.2d 14 (3d Dist.1999). The owner or possessor of the land owes a duty of ordinary care to his invitees. *Newton v. Pennsylvania Iron & Coal Inc.*, 85 Ohio App.3d 353, 619 N.E.2d 1081 (2d Dist.1983).

**{¶20}** A social guest is a person who enters the land of another under an actual invitation extended by the host. *Williams v. Cook*, 132 Ohio App.3d 444, 725 N.E.2d 339 (3d Dist.1999). On the basis of that invitation, a social guest is on the premises presumably giving the possessor some personal benefit, which may be an intangible benefit. *Hall v. Watson,* 7th Dist. Mahoning No. 01 CA 55, 2002-Ohio-3176, ¶ 27. The duty owed to a social guest is to exercise ordinary care not to cause injury to his guest by any act of the host or by any activities carried on by the host while the guest is on the premise and to warn the guest of any condition of the premise which is known to the host and which one of ordinary prudence and foresight in the position of the host should reasonably consider dangerous if the host has reason to believe that the guest does not

know and will not discover such dangerous condition. *Id.* citing *Scheibel*, 156 Ohio St. 308.

**{¶21}** Here, the deposition testimony establishes Kevin and Michael were friends and they often spent time at each other's house socially. They also did jobs for each other without pay, such as Michael welding items for Kevin and Kevin doing electrical work for Michael. Kevin averred in his deposition that they were friends doing work for friends. Kevin Saliba Depo. 15.

**{¶22}** In an Eleventh Appellate District case, the court determined that when one friend was housesitting for another friend without pay, the house sitter was a social guest, not an invitee. *Sorensen v. DeFranco*, 11th Dist. Lake No. 2013-L-038, 2013-Ohio-5829, 6 N.E.3d 664, ¶ 42-43. The house sitter was injured when the homeowner's furnace leaked carbon monoxide. *Id.* The appellate court agreed with the trial court that the house sitter was a social guest because the facts established he was housesitting without compensation for a longtime friend. *Id.* at ¶ 42. This is similar to the facts in this case. Kevin and Michael were longtime friends who went to each other's houses socially and did jobs for each other without pay. While on October 4, 2017 Kevin may have been stopping by to have Michael weld an item for him and to check on an electrical issue, given the facts this was not for a business purpose rising to the level of an invitee. Rather, Kevin was helping out a friend in a manner that was commonly done in the past.

**{¶23}** Accordingly, the trial court was correct in its determination that Kevin was a social guest when he was injured. Thus, Appellees only duty to Kevin as a social guest was to warn him of any dangerous condition of which they were aware. *Id.* at ¶ 43.

**{¶24}** This assignment of error lacks merit.

## Actual or Constructive Knowledge of Hazardous Condition
### First Assignment of Error

"The trial court erred in granting Appellee's Motion for Summary Judgment."

**{¶25}** Appellants argue the evidence indicates Appellees knew of the condition and failed to warn Kevin. They contend the affidavit of Donald DeVolld and Courtney Miley's deposition testimony established Appellees knew of the danger. Courtney Miley's deposition testimony indicated Appellees knew the water had an odor. DeVolld's affidavit

Case No. 21 NO 0481

indicated he had smelled the water and it smelled like raw sewage. He indicated he had warned Appellees that by burying the old house in the basement they could contaminate the water supply in the cistern.

**{¶26}** Appellees counter, asserting statements in DeVolld's affidavit should not be considered on appeal. They contend the trial court did not consider or cite his affidavit in rendering its decision. They also assert the deposition testimony from the parties establish Appellants did not know of the toxic gases in the cistern.

**{¶27}** Starting with DeVolld's affidavit, Appellees are correct that the judgment entry did not reference it in rendering its decision and the trial court did not rule on the request to strike. Appellees contend the trial court's failure to reference DeVolld's affidavit means it was not considered and cites to case law indicating an appellate court in reviewing summary judgment rulings will not rule upon issues raised in a summary judgment motion that were not considered by the trial court. They cited our *Hartline* case. *Hartline v. Atkinson*, 7th Dist. Monroe No. 20 MO 0004, 2020-Ohio-5605, ¶ 19. However, that case is distinguishable. That case involved the MTA and the DMA. The trial court granted summary judgment based on the DMA and specifically held the MTA claim was moot in light of its ruling on the DMA. Thus, when on appeal, the losing party asked our court to affirm summary judgment based on the MTA which we declined to consider because it was specifically not considered by the trial court.

**{¶28}** That is different than the scenario here. Here, we are dealing with summary judgment evidence and the trial court's lack of a ruling on a motion to strike that evidence. The trial court did not specifically indicate it was not considering the evidence and was striking it, rather it just simply did not reference the evidence in rendering its decision. It is noted the trial court granted summary judgment, but ordered Appellees to draft the entry in accordance with its decision. 2/22/21 J.E. Regardless, generally, "'if the trial court fails to mention or rule on a pending motion, the appellate court presumes that the motion was implicitly overruled.'" *State v. Matthews*, 2d Dist. Greene No. 2015-CA-73, 2016-Ohio-5055, ¶ 15, quoting *State v. Davis*, 9th Dist. Medina No. 07CA0028-M, 2008-Ohio-999, ¶ 5. Consequently, without a ruling on the request to strike it is presumed it is overruled.

Case No. 21 NO 0481

{¶29} This, however, does not mean the trial court's failure to reference the DeVolld affidavit or rely on it was incorrect. The DeVolld affidavit did not create a genuine issue of material fact requiring the denial of the summary judgment.

{¶30} The DeVolld affidavit made two claims. First, that the condition of the hazardous gas in the cistern was created by burying the old house in the basement of the old house rather than hauling it away to a land fill. The second statement was DeVolld stated prior to the incident on October 4, 2017 he smelled the water coming from Appellees' cistern and it smelled of raw sewage. He indicated this was the exact problem he had warned Michael about and DeVolld "knew that the smell had to be coming from the cistern because that's where the water came from, so did they [Appellees] because we [DeVolld and Appellees] discussed it many times." DeVolld Affidavit.

{¶31} At the trial court level, Appellees argued the statement regarding what caused the toxic gas could not be offered by DeVolld because he was not an expert in this area. Rather, he was a general contractor. Appellees conclusion is correct. Pursuant to Evid.R. 702 a witness may testify as an expert if the witness' testimony relates to matters beyond the knowledge or experience possessed by lay persons, the witness is qualified as an expert by specialized knowledge, skill, experience, training, or education regarding the subject matter of the testimony, and the witness' testimony is based on reliable scientific, technical, or other specialized information. The affidavit here does not establish DeVolld is qualified as an expert. This is an area that would require specialized knowledge to know what caused the toxic gases in the cistern. Therefore, his testimony as to the cause was not admissible for purposes of establishing what caused the gases and for Appellees' alleged knowledge of the creation of factors that could possibly have caused toxic gases in the cistern.

{¶32} Appellees' affidavits established they had been in the cistern multiple times before the incident, all of those times they were in the cistern for a length of time cleaning it, and there was no smell of chemicals. Michael Miley Affidavit; Courtney Miley Affidavit. In July 2017 they were in it for 5 hours cleaning it without incident. Michael Miley Affidavit; Courtney Miley Affidavit. They specifically indicated they cleaned and entered the cistern after they noticed the water was cloudy and smelled like pond water. Michael Miley Affidavit; Courtney Miley Affidavit. In neither of their affidavits or deposition testimony did they describe the smell of the water as raw sewage.

Case No. 21 NO 0481

**{¶33}** As referenced above, the duty owed to a social guest is, "(1) to exercise ordinary care not to cause injury to his guest by any act of the host or by any activities carried on by the host while the guest is on the premises, and (2) to warn the guest of any condition of the premises which is known to the host and which one of ordinary prudence and foresight in the position of the host should reasonably consider dangerous, if the host has reason to believe that the guest does not know and will not discover such dangerous condition." *Scheibel*, 156 Ohio St. 308, paragraph three of the syllabus.

**{¶34}** Appellees contend this requires actual or constructive knowledge of the dangerous condition. "Actual notice exists where, from competent evidence, the trier of fact can conclude the pertinent information was personally communicated to, or received by, the party." *Fraley v. Ohio Dept. of Rehab. & Correction*, 10th Dist. Franklin No. 18AP-731, 2019-Ohio-2804, 139 N.E.3d 1264, ¶ 23 (10th Dist.), quoting *Kemer v. Ohio Dept. of Transp.*, 10th Dist. Franklin No. 09AP-248, 2009-Ohio-5714, ¶ 21. It "may be (1) express or direct information, or (2) implied or inferred from the fact that the person had means of knowledge which he did not use." *Id.* "Constructive notice of a defective condition can be imputed to a defendant when the plaintiff presents evidence establishing that the defect could or should have been discovered." *Fraley* at ¶ 30, quoting *Kemer* at ¶ 24. "To support an inference of constructive notice, a plaintiff may submit evidence that the condition existed for such a length of time that the owner or its agent's failure to warn against it or remove it resulted from their failure to exercise ordinary care." *Id.*, quoting *Jenkins v. Ohio Dept. of Rehab. & Corr.,* 10th Dist. Franklin No. 12AP-787, 2013-Ohio-5106, ¶ 12, citing *Presley v. Norwood*, 36 Ohio St.2d 29, 31-32, 303 N.E.2d 81 (1973).

**{¶35}** The record does not indicate Appellees had actual or constructive notice of the condition of the toxic gases in the cistern. The record indicates Appellees and Courtney's father were in the cistern in July 2017, prior to the October 4, 2017 incident, for multiple hours and did not get sick or smell gases. Michael was also in the cistern earlier on October 4, 2017 to inspect it after it was drained. He did not get sick from being in the cistern and did not smell gases. It was not until later in the evening on October 4 that gases in the cistern caused injury. There is no indication the condition of the cistern was known or existed for a length of time. From the evidence submitted the smell of gases in the cistern only occurred later on October 4. Michael Miley also avowed it was on October 4, 2017 when he first noticed a crack in the wall where water was leaking into

the cistern. Thus, the leak in the cistern was not known until the day of the incident. The leak indicated the entry of water, but this was not evidence that toxic gases were present earlier on October 4, when the leak was discovered. Moreover, a reasonable person probably would not believe there was constructive knowledge of the condition because the evidence clearly indicates Michael went into the cistern on October 4 twice without protective gear. It seems illogical that the property owner would go into the cistern with knowledge of its dangerous condition without protective gear. Consequently, there was no awareness of toxic gases constituting constructive notice or actual notice.

**{¶36}** Furthermore, while there is testimony the water was cloudy and smelled of pond water, there is no indication that the cloudiness and pond smell was caused by the toxic gas. This type of evidence would require an expert or someone with knowledge of what would cause gases in a cistern. As stated above, DeVolld would not qualify as an expert unless there was more to indicate his expertise in this area.

**{¶37}** For those reasons this assignment of error lacks merit.

<u>Conclusion</u>

**{¶38}** The trial court correctly determined Kevin was a social guest. The evidence did not establish a genuine issue of material fact as to whether Appellees had constructive or actual knowledge of the toxic condition of the cistern. The grant of summary judgment for Appellees is affirmed.


Donofrio, P J., concurs.

D'Apolito, J., concurs.


<u>Case No. 21 NO 0481</u>

For the reasons stated in the Opinion rendered herein, the assignments of error are overruled and it is the final judgment and order of this Court that the judgment of the Court of Common Pleas of Noble County, Ohio, is affirmed.  Costs to be taxed against the Appellant.

A certified copy of this opinion and judgment entry shall constitute the mandate in this case pursuant to Rule 27 of the Rules of Appellate Procedure. It is ordered that a certified copy be sent by the clerk to the trial court to carry this judgment into execution.

## NOTICE TO COUNSEL

**This document constitutes a final judgment entry.**